† HUTCHINSON *versus* CHASE.

One sole seized of a parcel of land with mill privileges attached, has no power to convey, with such land, the *right of flowing* lands above, held by him in *common* with another.

But where a mill-dam, owned by tenants in common, flows their common lands above, a release by one to the other of the mill sites and all the privileges and appurtenances thereto belonging, will authorize the grantee to continue the flowing of the lands above, and to transmit that right to *his* grantees without being liable to the payment of damages.

Hutchinson *v.* Chase.

ON EXCEPTIONS from *Nisi Prius*, RICE, J., presiding.

COMPLAINT, for flowing land by means of respondent's dam.

The proceedings were commenced under c. 126, R. S.

The complainant appeared to be the sole owner of lot No. three, alleged to be damaged by means of the dam.

Respondent claimed the right to flow the same by sundry conveyances, through which he claimed the rights originally granted by the Commonwealth of Massachusetts to Edmund Bridge, Robert Page and Brown Emerson.

In the grant to these persons were included the land where the mills and dam are located and the land flowed.

Bridge released his interest in the grant to Page and Emerson, and Page afterwards released to Emerson, his interest in that part of the grant embracing the respondent's mill sites.

Afterwards Emerson, in 1790, conveyed to one Chase Elkins all the mill privileges on Hale's brook to Jennings' meadows, and one acre of land with each mill privilege, to be laid out so as best to accommodate the privilege on the eastern side of the brook, the said Elkins to have all said Emerson's right of building a dam or dams on that part of said brook mentioned, and also of building a dam and flowing Hale's brook, pond or ponds, containing about twelve acres.

The defendant appeared to have succeeded to all the rights of Elkins.

The presiding Judge instructed the jury, that it appearing, from the record titles produced, that at the date of the deed from Emerson to Elkins, in 1790, he was the owner of the land and privileges deeded to Elkins, and if satisfied that he was the owner with said Page, as tenant in common in said lot No. 3, then Emerson might convey the right to flow said lot No. 3, without paying damage.

The verdict was for respondent.

*Bradbury & Morrill,* in support of the exceptions, maintained that Emerson, who was sole proprietor of the mill

privilege, could not convey the right to flow lot No. 3, which was owned by the proprietors, and was in possession of a third party, without paying damages, and cited *Stevens* v. *Morse,* 5 Greenl. 25.

*Bean,* with whom was *Paine, contra,* sustained the instructions.

No action could have been maintained against Elkins for the flowage; not by Page alone, because tenants in common must all join for injury to the common property; Page's remedy was by partition. Co. Lit. 198.

He could not support an action at common law. *Gilman* v. *Mellen,* 12 Pick. 120; *May* v. *Parker,* 12 Pick. 34. Nor could he under the mill Act. *Tucker* v. *Campbell,* 36 Maine, 346.

Such action would not lie by Emerson and Page, for Emerson had by his deed released his claim for damages.

In this case the complainant derives title either from Emerson and Page or by disseizin; if in the former mode, he can have no greater right than they had; if in the latter mode he could not disseize of a right to flow which is incorporeal.

RICE, J. — By the provisions of § 5, c. 126, R. S., any person sustaining damages in his lands, by their being overflowed by a mill-dam, may obtain compensation for the injury, by complaint to the District Court in the county where the lands so flowed shall be situated, or any part of the same.

Section 9 of same chapter authorizes the owner or occupant of such mill to appear and plead in bar of such complaint, that the complainant has no right, title or estate in the lands alleged to be flowed; or that he has a right to maintain such dam and flow the lands for an agreed price or without compensation; or any other matter which may show that the complainant cannot maintain the suit.

The complainant's land alleged to be flowed is situated

on Hale's brook upper pond; and the defendant's dam is located on Hale's brook, below the lower pond.

A grant of land, the exterior bounds of which included the several parcels now claimed by the complainant and defendant, was made by the Commonwealth of Massachusetts to Edmund Bridge, Robert Page and Brown Emerson, July 2d, 1785. Bridge released his interest in the above grant to Page and Emerson, January 10th, 1787.

Nov. 17, 1789, Page conveyed to Emerson that part of the land granted by the Commonwealth, on which the dam of the defendant, of which complaint is made, now stands.

Sept. 18, 1790, Emerson conveyed to Chase Elkins certain lands and privileges, from "Lower Hale's brook pond to Jennings' meadow." This deed, after describing the land conveyed, continues, " as the said Elkins is to have all the said Emerson's right of building a dam or dams on that part of said brook, above described, and also of building a dam and flowing Hale's brook pond and ponds; said tract of land contains about twelve acres."

So far as appears from the title deeds, Emerson, at the date of the above deed, was sole seized of the mill privilege now owned by defendant, and seized as tenant in common with Page, of one half the land now alleged to be flowed. There is no evidence that the flowed land has been divided, and the tenancy in common thus sundered.

It does not seem to be contested, that the title which Elkins acquired to the privileges and all his rights to flow, unless lost by adverse possession, have passed, by sundry mesne conveyances, to the defendant.

The earliest deed put into the case by the complainant, under which he claims title to the premises alleged to be flowed, bears date Nov. 22, 1823. His sole seizin of the land was not controverted, subject however, as the defendant contends, to his right to flow, in common with the complainant.

The defendant contends that in 1790, Emerson being sole seized of the mill privileges below the lower pond, and at

the same time as tenant in common with Page of one half of the land flowed, would have the right, by his dam, to flow the land owned in common by himself and Page, and that this assumed right of Emerson's could be conveyed by him, and was conveyed to Elkins, under whom the defendant now holds.

The possession and seizin of one tenant in common, is the possession and seizin of the other, because such possession is not adverse to the right of his companion, but in support of their common title. And although one tenant in common takes the whole profits, yet this does not divest the possession of his companion. Greenl. Cruise, Tit. xx, Tenancy in common, § 14.

It is upon this general rule of law, as applicable to this class of tenancies, that the defendant relies, in his argument, to show that Emerson might lawfully flow the land owned in common by himself and Page, and also that the grantees of Emerson were entitled to the same rights.

The rule, though general in its terms, is subject to many qualifications. One tenant in common is not remediless in case his co-tenant shall assume absolute dominion over the common property. The right of each extends to all and every part of the common estate. Absolute exclusion of one tenant from any part, is a violation of his rights, for which the law will afford an appropriate remedy.

"If two tenants in common be of a folding, and the one of them disturb the other to erect hurdles, he shall have an action of trespass *quare vi et armis* for this disturbance." 1 Coke, 200, b, [d.]

"If two several owners of houses have a river in common between them, if one of them corrupt the river the other shall have an action upon his case." *Ibid.* [e.]

One tenant in common is not authorized to exclude another from the possession of land owned in common, or to destroy a chattel, or to sell the whole of it. If one tenant in common of land oust his co-tenant, the latter may maintain ejectment. 3 Wils. 118; *Brackett* v. *Norcross*, 1 Maine,

89. If he destroys personal property owned in common, trover lies. 1 Coke on Litt. 200, a. So if he sell the entire property. *Farr* v. *Smith*, 9 Wend. 338.

The general rule seems to be well settled that one tenant in common cannot, as against his co-tenant, convey any part of the common property by metes and bounds, or even an undivided portion of such part. *Bartlett* v. *Harlow*, 12 Mass. 348; *Peabody* v. *Minot*, 24 Pick. 329; *Griswold* v. *Johnson*, 5 Con. 366; *Smith* v. *Benson*, 9 Vt. The reason is obvious. His title is to an undivided share of the whole, and he is not authorized to carve out his own part, nor to convey in such a manner, as to compel his co-tenants to take their shares in several distinct parcels, such as he may please. *Great Falls Co.* v. *Worcester*, 15 N. H. 412. Even though his deed may bind him by way of estoppel; as against the co-tenants, such deed is inoperative and void. 4 Kent's Com. 368.

Though tenants in common are, in legal contemplation, all seized of each and every part of the estate, still they are not permitted to do acts which are prejudicial to their co-tenants.

Thus, if two tenants in common be of a wardship of the bodie, and one doth ravish the ward, and one tenant in common release to the ravisher, this shall go in benefit of the other tenant in common, and he shall recover the whole, and this release shall not be any bar to him. And as if two tenants in common be of an advowson, and they bring a *quare impedit*, and the one doth release, yet the other shall sue forth and recover the whole presentment. 1 Cok. Inst. 197, b.

As one tenant in common cannot convey the entire estate, or the whole of any portion thereof, or give a valid release for injuries done thereto; so too, and for the same reasons, he cannot subject the common property to particular servitudes, by which the rights of his co-tenants will be affected. These servitudes, or easements, must be created by the owner, and one tenant in common cannot establish them, upon

the common property, without the consent of his co-tenant. 3 Kent's Com. 436; 2 Hilliard's Abr. 118.

Such also is the rule of the civil law. He who has the property of an estate, only in common with others, without any division of the several shares, cannot subject any part of it to a service without the consent of all his co-partners; and any one of them may hinder it, until the estate being divided into shares, every one may impose a service on his own share if he think fit. And likewise he who possesses in common and undivided, a portion of the land or " tenement to which the service is so due, cannot by himself, free the land or tenement which owes the service; but the service remains for the portions of others. For these services are for every part of the land or tenement to which they are due, and every one of the proprietors has an interest in the service for his own portion." Domat's Civil Law, Cushing's ed. ¶ 1035.

This principle has been applied to the class of cases now under consideration, and it has been decided that one tenant in common has no right, by means of a close erected on other land of which he is sole seized, to flow the land owned in common, without the consent of his co-tenants. It is a wrong to his co-tenants, of the same character, and which allows of similar remedies, as if they had been sole seized. *Odiorne* v. *Lyford*, 9 N. H. 502; *Great Falls Co.* v. *Worcester*, 15 N. H. 412.

The case of *Tucker* v. *Campbell & al.*, 36 Maine, 346, has been cited to show, that in a complaint for flowing land owned by tenants in common, by means of a mill-dam, all the co-tenants must join. At the trial, it was evidently supposed that the same principles were involved in this case that were settled by this Court in that. Such however is not the fact. In the case at bar there is no suggestion that the complainant is tenant in common of the *land* flowed. Of that, he is sole seized. We have already seen that he is not, as was supposed, tenant in common of the right to flow. Therefore the legal objection to the maintenance of the pro-

cess, supposed in the argument, does not exist. But were it otherwise, the difficulties presented in *Tucker* v. *Campbell*, would not exist in this case. If the defendant is owner of one undivided half of the right to flow, the complainant is the owner of the other half, and therefore on that hypothesis, represents all the interest now existing in the land, adverse to the defendant. A judgment therefore which should settle the conflicting right to flow between these parties, would just as effectually close litigation, as though the complainant was sole seized, because there is no other party in existence to join with him, or who could maintain a like complaint against the defendant. There could, therefore, by no possibility, be multifarious and conflicting judgments in this case, as was supposed in the case cited. At most, it could only affect the question of damages.

To flow the land owned in common, by one tenant in common, operates as an absolute exclusion of the co-tenant, *pro tanto*, from the beneficial use of the common estate, for which he would have been entitled to a remedy at common law. In all cases, where applicable, the proceeding by complaint has been substituted by the Legislature of this State, for an action at common law. No practical difficulties being perceived in the way of maintaining this process, we think it cannot be defeated by technical objections.

As the case may be again presented to a jury, it may not be improper to make a suggestion in relation to the deed from Page to Emerson, under which the defendant holds. That deed conveys one undivided half of the land upon which the defendant's dam is now located, with all the "privileges and appurtenances thereunto belonging." Whether there was then, upon the land conveyed, a mill privilege and dam, by which the land now owned by complainant was flowed, the evidence does not disclose. If such was the case, then the whole right to flow would seem to have been in Emerson at the time he conveyed to Elkins, and to have passed by that deed to Elkins, and through him to the defendant.

As the case appears by the report, we are satisfied it was presented to the jury under an erroneous view of the law, and that a new trial should be had.

*Exceptions sustained.* —

*Verdict set aside and new trial granted.*

TENNEY, J., being unable to attend at the argument of the cause, took no part in the decision.