ANDREW KELLEY et als. *vs.* FREELAND JONES.

Penobscot.   Opinion April 5, 1913.

*Assessment. Adverse Possession. Boundaries. Deed. Dedication*
*Description. Measurements. Monuments. Plan. Public*
*Use. Real Action. Revised Statutes, Chapter 9,*
*Section 8. Tax Deed. Title. Wills.*

In this action to recover one-fourth part in common and undivided of a triangular piece of land on the easterly corner of Hammond and Union Streets in Bangor, the plaintiffs claim to have derived title to the land in question by virtue of a warranty deed from Gideon Haines to their ancestor Andrew Kelley, dated August 26, 1870.

*Held:*

1. That the plaintiffs and their predecessors in title having been in uninterrupted possession of the premises for more than forty years prior to the commencement of this action, exercising dominion and control over the whole lot, would thereby acquire title to all of the land described in the deed, although a part was covered only by the clause of release and quitclaim.

2. A dedication of land to public uses must be accepted within a reasonable time.

3. Adverse possession of land by maintaining buildings thereon for forty years gives title to the occupants to the extent of such occupancy.

4. In the assessment of a tax which establishes the lien on land and forms the basis of all subsequent proceedings, there must be a definite and distinct description of the land upon which the tax is intended to be assessed.

5. That the description of the demanded property in the assessment and tax deed is not characterized by the certainty and plainness required by law and was not sufficient to create a lien on the property.

On report. Judgment for plaintiffs accordingly.

This is a real action to recover one-fourth part in common and undivided of a triangular piece of land, with the buildings thereon, situated on the easterly corner of Hammond and Union Streets in Bangor. Plea, the general issue. At the conclusion of the evidence, the case was reported to the Law Court upon so much of the evidence as is legally admissible, the Law Court to render such final judgment in the case as the legal rights of the parties may require.

The case is stated in the opinion.

*Matthew Laughlin,* for plaintiffs.

*Lawrence V. Jones,* for defendant.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

WHITEHOUSE, C. J. This is a real action in which the plaintiffs seek to recover one-fourth part in common and undivided of a triangular piece of land with the buildings thereon situated on the easterly corner of Hammond and Union Streets in Bangor. The entire premises described in the writ occupy the angle made by the intersection of the two streets; the northerly line thereof, coincident with the southerly side line of Hammond Street, extending easterly 47 88-100 feet, and the southerly line thereof, coincident with the northerly side line of Union Street, extending southeasterly 61 64-100 feet, from an iron spike driven into the ground at the point of intersection of these two street lines. The easterly side line of the triangle, connecting the easterly ends of the two lines

above described, measures 38 82-100 feet.  It thus appears that the triangle described in the writ measures 47 88-100 feet on the north side, 38 82-100 on the east side, and 61 64-100 feet on the south-westerly side.  With the exception of the small heater piece west of the jewelry store, measuring 10 1-2 feet on Hammond Street, 11 1-2 feet on Union Street, and 8 feet across, the premises in controversy are substantially covered by buildings.

The plaintiffs claim to derive title by virtue of a warranty deed from Gideon Haines to their ancestor Andrew Kelley, dated August 26, 1870.  The description of the land in that deed, including the quitclaim of "the point of land lying westerly and between Hammond and Union Streets," appears to comprise the entire premises now in question.  The Andrew Kelley named as grantee in that deed died in 1897, leaving eight children, of whom two, Andrew, and Samuel H., were originally named as plaintiffs in this action.  Andrew died after the action was commenced, and his devisees, of whom Andrew Kelley of the third generation was one, came in to prosecute the suit with Samuel H., the other original plaintiff.  Thus the present plaintiffs, representing only two of the eight heirs of the first Andrew Kelley, only claim to recover two-eights in common and undivided of the entire premises described in the declaration in the plaintiffs' writ.

It appears from the warranty deed from Haines to Kelley above named, that there were buildings on the part warranted in 1870, the date of the deed; and it appears in evidence that there have been buildings on that land from that time to the time of the trial.  Samuel H. Kelley, one of the original plaintiffs, testifies that he could remember back to 1875, "when the old Avenue House used to be there;" that he used to go out there quite often with his father; that his father always said he was going to build a larger store and build it out to the point where there was a stone; that when he first went there, the meat market and store, and the cellar-way were there, but the jewelry store had only been built about eighteen years; that the land between the end of the jewelry store and the extreme point was at that time part of the sidewalk; that is to say, people were crossing there all the time; that during all those years, up to the time of his father's death in 1897, no one else had ever been in possession of the premises to his knowledge.

It is a satisfactory conclusion from all of the evidence that the plaintiffs and their predecessors in title had been in uninterrupted possession of the premises, described in the warranty deed from Haines to Kelley in 1870, for more than forty years prior to the commencement of this action. It has been noted that the point of land between Hammond and Union Streets, lying westerly of the premises specifically included in the deed of warranty, was covered only by the quitclaim clause; but after maintaining possession of the land by virtue of this deed for a period of forty years, exercising dominion and control over the whole of it, the plaintiffs would thereby acquire title to all of the land described in the deed, although a part was covered only by the clause of release and quitclaim. *Ripley* v. *Trask,* 106 Maine, 550; *Banton* v. *Herrick,* 101 Maine, 134; *Hornblower* v. *Banton,* 103 Maine, 375.

But the defendant contends that the plaintiffs have failed to prove title in themselves by reason of an alleged dedication to the public of the premises in a deed given in 1832 by Moses and Amos Patten to Josiah Deane, a predecessor in title of Gideon Haines from whom the plaintiffs derive title. The particular description of the premises conveyed in that deed is followed by a release in the following terms, "Also releasing for public uses only all our right and interest in and to the point of land lying west of said granted premises and between said Carmel and Union Streets." It is admitted that Carmel Street, mentioned in this release, is now Hammond Street; and that the "point of land" thereby released includes substantially all of the premises demanded in the plaintiffs' writ in this case. Hodgdon's plan referred to in that deed shows a vacant space west of the premises conveyed to the grantee therein named.

Assuming without deciding that this question is open to the defendant, it is the opinion of the court that the public have never acquired any rights in the premises in controversy under the release of the Pattens in 1832, excepting the small "heater-piece" at the extreme point, west of the jewelry store, measuring 10 1-2 feet on Hammond Street, 11 1-2 feet on Union Street and 8 feet across, which is said to have been constantly used as a part of the sidewalk.

The dedication in the Patten deed was never accepted by the public or the municipality. There is no evidence that, during this

entire period of eighty years, the public made any use whatever of the land in controversy, indicating an acceptance of a dedication. On the contrary, the evidence shows that substantial buildings had been erected upon it prior to 1870 by some of the plaintiffs' predecessors in the possession of it; and that the premises have been permanently occupied as private property and devoted to uses entirely inconsistent with the purposes of the alleged dedication to the present time. A dedication must be accepted within a reasonable time; and that time has long since elapsed. 9 Am. & Eng. Enc. of Law, 42, 50, 78; 13 Cyc. of L. & P., 463-466. See also, *Northport W. G. Campmeeting Assn.* v. *Andrew,* 104 Maine, 542; *Brown* v. *Duckey,* 106 Maine, 102; and *Bartlett* v. *Harmon,* 107 Maine, 451.

Furthermore, it is expressly provided by Sec. 90, Chap. 23, R. S., that, "When buildings or fences have existed more than twenty years fronting upon any way, street, lane or land appropriated to public use," and the bounds of such street, etc., can be made certain, "no time less than forty years will justify their continuance thereon." Thus, the adverse possession of land by maintaining buildings thereon for forty years gives title to the occupants to the extent of such occupancy. *Stetson* v. *Bangor,* 73 Maine, 357; Dillon's Munc. Corp., 4th Ed., Sec. 675; 1 Am. & Eng. Enc. of Law, 878.

But the defendant claims title in himself by virtue of a tax deed dated December 7, 1900. It is admitted that no taxes assessed on this property were ever paid by any one, except by sale of the property, from 1899 to the time of the trial, for this action in 1912. In 1899, the tax upon it was assessed to George Kelley as resident owner, and the property sold to the defendant in 1900 for non-payment of this tax. George Kelley was the son of Andrew Kelley, and acquired a life estate in this property by virtue of a devise in the will of his father, who was the grantee in the deed from Gideon Haines under which the plaintiffs claim title. In 1902, after the property had been sold for three years in succession, George Kelley's interest as life tenant was sold and conveyed to Lydia H. Jones, the mother of the defendant, for $400. Thereafter, she collected the rents of the property, but it was sold each year for the non-payment of taxes, and purchased by the defendant. The tax

deed of 1900, however, based on the sale for non-payment of the tax assessed to George Kelley as resident owner, in 1899, is the one upon which the defendant relies.

It appears from an inspection of the copy of the deed introduced in evidence that the property is therein described as follows, "Store and tenement over same and N. W. part lot No. 16, corner of Hammond and Union Streets of Andrew Kelley heirs." It is contended in behalf of the plaintiffs, that there are three defects in these proceedings for the sale of the land for taxes, each one of which is fatal. It is argued, first, that the property was not taxed to the owner, second that the property was not sufficiently and correctly described, and third, that the property described in the tax deed is not the property described in the writ and shown by the evidence to be the property of the plaintiffs.

The first objection is not a valid one. Sec. 8 of Chap. 9, R. S., 1903 (Sec. 9, Chap. 6, R. S., 1883) provides that "taxes on real estate shall be assessed . . . to the owner or person in possession thereof on the first day of each April." It has been seen that George Kelley, to whom the tax was assessed in 1899, was the owner in possession of a life estate in the property. It was his duty to pay all taxes assessed upon the property during his life tenancy, (*Garland* v. *Garland,* 73 Maine, 97; *Varney* v. *Stevens,* 22 Maine, 334), and the tax was properly assessed to him as the owner.

But the questions raised by the second and third objections present more serious difficulties. With respect to the second objection, it is provided by Sec. 73 of Chap. 10, R. S., that the description of the property assessed should designate the "name of the owner, if known, the right, lot and range, the number of acres as nearly as may be, the amount of tax due, and such other short description as is necessary to render its identification certain and plain." It is deemed essential to the validity of a tax sale of lands that there shall be a strict compliance with all the directions of the statute. "To prevent forfeiture, strict constructions are not unreasonable," *Baker* v. *Webber,* 102 Maine, 414; *Cressey* v. *Parks,* 76 Maine, 532. In the assessment which establishes the lien on land and forms the basis of all subsequent proceedings, there must be a definite and distinct description of the land upon which the tax is intended to be assessed. *Burgess* v. *Robinson,* 95 Maine, 120; *Green* v. *Alden,* 92

Maine, 177; *Greene* v. *Walker*, 63 Maine, 311; *Greene* v. *Lunt*, 58 Maine, 518. The description in the deed must correspond substantially with that employed in the antecedent proceedings and locate the land with such reasonable certainty as to identify it without the aid of extrinsic facts. *Hill* v. *Mowry*, 6 Gray, 552; *Annan* v. *Baker*, 49 N. H., 173.

In the case at bar, the property is described as consisting of a "store and tenement over same and N. W. part of lot No. 16, corner Hammond and Union Streets, of Andrew Kelley heirs." It appears from the evidence, however, that there are buildings at three of the corners of Hammond and Union Streets; and that at the corner immediately opposite the property in question, there is a building used as a store and dwelling-house belonging to another owner. It has also been seen that George Kelley's title to his life estate did not come by inheritance from the "Kelley heirs," but by, devise from his father. Thus far the description is ambiguous and obviously not such as to render the identification of the property "certain and plain." But it is contended that the reference to "N. W. part lot No. 16" indicates a definite location. If it be assumed that the property in question is a part of lot No. 16, such a description of it as a part of another lot without defining specifically what part, and without giving boundaries or information by which it could be definitely located, would be insufficient according to numerous authorities in this State. In *Greene* v. *Walker*, 63 Maine, 311, the description of the fourth parcel as "the northwesterly part of lot 6, range 5, 25 acres, on which Aaron P. Cox resides," was held insufficient, although much more definite and certain than in the case at bar. See also the other descriptions held insufficient in *Greene* v. *Walker*, and *Greene* v. *Lunt*, supra. See also *Griffin* v. *Creppin*, 60 *Maine*, 270, and *Bank* v. *Parsons*, 86 *Maine*, 514.

But the plaintiffs insist that their third objection to the sufficiency of the description is insuperable; and that is, that no part of the demanded premises is in lot 16, and that the land described in the assessment and tax deed is not the same property described in their writ and in the deed from Haines to Kelley given in 1870.

It is important to note, in the first place, that Moses Hodsdon's original plan, made prior to 1832, and referred to in the deed from the Pattens to Deane above examined, left all of the premises in

controversy as an unmarked and vacant lot entirely westerly of lot 16. In his testimony, civil engineer Nason, after giving the several measurements of the premises in controversy, hereinbefore stated, according to the Deane plan referred to in the deed from Haines to Kelley, given in 1870, further states with reference to Hodsdon's plan, a copy of which is in evidence, that he finds upon it a lot numbered 16; that working from both plans and verifying his work by actual measurements on the surface of the earth, he was able to locate lot 16 with reference to the premises in question; and that lot 16 does not touch the premises in question at any point; that measured on Union Street, it is about four feet distant, and measured on Hammond Street, it is about two feet distant from the demanded premises. He also states that he made a verification of this work by measuring on the face of the earth from a monument in the line of Clinton Street, called Pearl Street on Hodsdon's plan, and found the distances between Clinton Street and the two corners of lot 16 coincided with his other measurements and the plan; that the westerly line of lot 16, as delineated on Hodsdon's plan is forty-one feet in length, and as he measured that same line on the face of the earth, it was 41 1-2 feet; that according to the measurement appearing on the original plan in the Registry of Deeds, lot No. 16 would be about six inches nearer the property claimed by the plaintiffs, that is to say, it would be 3 1-2 feet at Union Street and one foot and six inches at Hammond Street; that he assumed that the monuments for Clinton Street were the same as for Pearl Street, and he had no hesitation in saying that if a line is drawn 41 feet in length on the westerly side of lot 16, it cannot possibly reach the land claimed by the plaintiffs. He had before testified, as above shown, that the easterly line of the Kelley lot in question measures 38 82-100 feet and although this line and the west line of lot 16 are not precisely parallel, he insists that they could not possibly meet.

On the other hand, Mr. Jones, a civil engineer called by the defendant, testifies that "in looking over Hodsdon's plan Pearl Street and Clinton Street are what are supposed to be the same streets now; but that he was unable to find anything on the records to show whether they were the same or not. He states that in the absence of any common starting point on the face of the earth, the question whether any part of the Kelley property is in lot 16 could

only be determined by the use of Hodsdon's plan without reference to any monuments on the face of the earth; that he took the westerly line of lot 16 as shown on that plan, as the base of the triangle and extended the line of Hammond and Union Streets to a point of intersection for the two sides of it, and then obtained the base angles, and by the aid of these, the angle at the intersection of the street lines; that he then solved the simple geometrical problem of finding the two sides of a triangle when its base and three angles are given, with the result that the Kelley property appeared to extend into lot 16 about four feet. He admits that he made no measurements on the face of the earth, such as Mr. Nason made, from the monuments on Pearl Street, now Clinton Street, to verify the results of his work performed by means of the plan alone, and no actual survey of any kind on the face of the earth for the purpose of testing the accuracy of any of the lines in question. It is not claimed that Hodsdon's plan was actually run by courses and distances so as to represent accurate angles. Hence monuments, which have actually been in existence on the surface of the earth for more than forty years, would control the results deduced from the angles delineated on the plan without any reference to such measurements.

The name of Pearl Street, which is represented on Hodsdon's plan made in 1832, appears to have been changed to Clinton Street; but there is no evidence of any change in the location or width of the street itself, although an examination of the records appears to have been made by engineer Jones. In the absence of any such evidence, there is an inference of fact that the established location and boundary lines continued unchanged. Chamberlayne's Mod. Law of Ev., Vol. 2, Sec. 1036. And in view of the testimony of the plaintiffs' engineer that his location of the property claimed by the plaintiffs, made by actual survey on the face of the earth, corresponds with the situation of the buildings and the property lines in that vicinity, and that his result was verified by actual measurement from Pearl Street, it is the opinion of the Court that the weight of evidence tends to show that no part of the demanded premises is in lot 16, and that the description of the demanded property in the assessment and tax deed is not characterized by the "certainty and plainness" required by the law, and was not sufficient

to create a lien on the property.   The plaintiffs have a better title than the defendant, and are entitled to judgment for two-eighths in common and undivided of the premises demanded, excepting the "point of land" lying west of the jewelry store, measuring 11 1-2 feet on Union Street, 10 1-2 feet on Hammond Street and 8 feet across.

*Judgment for plaintiffs accordingly.*