PERRY L. THOMPSON AND EDWARD K. THOMPSON
*vs.*
DENNIS J. GAUDETTE

PERRY L. THOMPSON
*vs.*
DENNIS J. GAUDETTE

Sagadahoc.    Opinion, November 14, 1952

*John P. Carey*, for plaintiff.

*Aldrich & Aldrich*, for defendants.

SITTING: THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ. MURCHIE, C. J., did not sit.

MERRILL, J. On exceptions to rejection of referee's reports. These were two real actions brought to recover land in the city of Bath. They were heard together before the same referee, who found for the defendant in each case. Written objections were filed to the referee's reports. The reports were set aside and rejected by the Justice of the Superior Court. The cases are before us on exceptions to this action by the presiding justice.

One Lizzie B. Thompson, the mother of the plaintiffs, owned a parcel of land in the city of Bath which comprised the premises described in both writs. During her lifetime this parcel was sold several times for non-payment of taxes, the city of Bath being the purchaser at the several tax sales. The city never entered or took actual possession under its tax deeds or any of them. All of the tax sales were defective. However, prior to the decease of Lizzie B. Thompson, the city of Bath sold the premises in question to the

defendant and conveyed them to him by quit-claim deed dated May 19, 1930, recorded May 20, 1930. Lizzie B. Thompson died the next day, May 21, 1930. There is no evidence from which it could be found that she knew that the sale to the defendant had been made or was even in contemplation. The plaintiffs claim title to the demanded premises by descent from and as the only heirs of their mother, Lizzie B. Thompson.

On June 29, 1934, Edward K. Thompson quit-claimed to the defendant all of his right, title and interest in and to a specific parcel of the common land.

On May 11, 1950, Perry L. Thompson brought a real action to recover from the defendant one undivided half of so much of the land inherited from his mother as was described in said deed from Edward K. Thompson to the defendant. On the same day Perry L. Thompson and Edward K. Thompson brought a real action against the defendant to recover the balance of the parcel inherited from their mother. These are the actions now before us for consideration.

The defendant in each case filed a plea of the general issue with a brief statement setting up the statute of limitations and also an equitable estoppel. Both cases were referred under rule of court to the same referee who heard them together. He found *against* the defendant on the issue of *adverse possession* in both cases, the defendant having been in possession but 19 years and 357 days, and there being no evidence that the city of Bath had ever entered or taken actual possession of the premises. The referee, however, found *for* the defendant in both cases on the ground that the plaintiffs were *equitably estopped* from asserting their title against him.

The equitable estoppel sought to be established against these plaintiffs is not based upon any affirmative action on

their part. The referee found that the failure of the plaintiffs to assert their title or to warn the defendant of an intent so to do when they knew that he had purchased the tax title to the premises from the city, had entered into possession of the premises and fenced the same, and had made improvements, including the moving a house and small building thereon, estopped them and each of them from asserting their title against him. In other words, the defense in these cases sustained by the referee is equitable estoppel based on silence. The defense relies upon the principles set forth in *Martin* v. *Me. Cent. R. R. Co.*, 83 Me. 100 at 105, as decisive of the issues presented by these cases. In that case it is declared:

"It is now familiar law that the owner of real or personal property may, by his conduct in inducing others to deal with it without informing them of his claim, debar himself from asserting his title to their injury. 'No principle,' says Chancellor Kent, in *Wendell* v. *Van Rensalaer*, 1 Johns. Ch. 344, 'is better established or founded on more solid considerations of equity and public utility than that which declares that if one man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice and his conscience is bound by this equitable estoppel.' But it is not necessary that the original conduct creating the estoppel should be characterized by an actual intention to mislead and deceive."

However, in the Martin case we called attention to limitations upon the application of the doctrine just stated when we said:

"Thus, while it is well established that the owner of land may by his conduct preclude himself from asserting his legal title, 'it is obvious that the doc-

> trine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles, if they were allowed to be affected by parol evidence. It should appear that there was either actual fraud, or fault or negligence equivalent to fraud on his part in concealing his title, or that he was silent when the circumstances would impel an honest man to speak, or that there was such actual intervention on his part as in *Storrs* v. *Barker, supra.' Trenton Banking Co.* v. *Duncan,* 86 N. Y. 221; *Shaw* v. *Beebe,* 35 Vt. 205."

The equitable estoppel in the *Martin* case, however, was not based upon silence. It was based upon the active conduct of the plaintiff. In that case the plaintiff had acquired title by adverse possession to property the record title of which was in his uncle. The defendant's predecessor in title sought to purchase the water right in question from the plaintiff. The plaintiff informed its representative that while he occupied the land, his uncle owned it. He agreed to see his uncle with the representative of the defendant's predecessor in title to see if the uncle would sell the water right or transfer it. Thereupon, he accompanied the representative of the defendant's predecessor in title to his uncle who, in the plaintiff's presence, executed a deed thereof to the defendant's predecessor in title under the immediate direction of the plaintiff. It further appeared that the plaintiff received from his uncle the consideration paid for the title. Under these circumstances, the court held that the plaintiff was estopped from asserting any title to the disturbance of the defendant's easement acquired under the title from his uncle.

The situation in the instant case is entirely different. So far as the record discloses, in this case the defendant acquired the tax title from the city of Bath without the

knowledge of either the plaintiffs' mother or the knowledge of the plaintiffs or either of them. Nor is there any evidence from which it could be found that either the mother or the plaintiffs knew of the defendant's contemplated purchase or that he was negotiating therefor. Furthermore, the defendant acquired that title prior to the decease of the plaintiffs' mother and before the plaintiffs' title passed to them by descent from her. The record does not show that the plaintiffs, or either of them, knew of the improvements made upon the land by the defendant or of his intent to make them before he made the same. The plaintiff, Perry L. Thompson, had no knowledge of any of the acts of the defendant with respect to the premises until after their completion. The record discloses that Edward K. Thompson did know that the defendant was finishing the house which he had moved onto the premises, the presence of which the plaintiff, Edward K. Thompson, did not discover until after the foundation was in and the house moved thereon. His only knowledge was the casual knowledge of a traveller on the highway seeing men working around the house after the foundation was in and the house thereon. Under these circumstances, failure to assert title or to give warning to the defendant does not furnish sufficient grounds to raise an equitable estoppel against the plaintiffs, or either of them, from asserting their title to the premises in question.

In these cases the plaintiffs claim as heirs of their mother whose title the city of Bath ineffectually attempted to forfeit for non-payment of taxes by tax sales. The defendant entered upon the premises under the quit-claim deed from the city of Bath with full knowledge that the only title that the city of Bath claimed to have in the premises was founded upon tax sales. In *Lowden* v. *Graham,* 136 Me. 341 at 344, we said:

"A cardinal principle in determining the validity of tax sales has been iterated and reiterated in the

decisions of our Court. It is known as the rule of strict construction. Apt citations are:-

'The sale of land for taxes is a procedure *in invitum,* and the provisions of the statute authorizing such sale must be strictly complied with or the sale will be invalid.' *French* v. *Patterson,* 61 Me. 203 at 210.

'As the plaintiff's title is founded solely upon the provisions of the statute, such provisions must be strictly complied with.' *Greene* v. *Lunt,* 58 Me., 518 at 532.

'It has, therefore, been held, with great propriety, that, to make out a valid title, under such sales, great strictness is to be required; and it must appear that the provisions of law preparatory to, and authorizing such sales, have been punctiliously complied with.' *Brown* v. *Veazie,* 25 Me., 359.

'To prevent forfeitures strict constructions are not unreasonable.' *Cressey* v. *Parks,* 76 Me., 532.

'It is deemed essential to the validity of a tax sale of lands that there shall be a strict compliance with all the directions of the statute.' *Kelley* v. *Jones,* 110 Me., 360, 86 A., 252, 255.

· See also *Baker* v. *Webber,* 102 Me., 414, 67 A., 144; *Ladd* v. *Dickey,* 84 Me., 190, 24 A., 813."

The defendant invokes an estoppel against the plaintiffs who are the sole heirs of the owner whose premises he purchased, based upon their silence and failure to assert their superior title to the premises when they knew that he had made and was making expenditures for improvements on the premises. In *Rogers* v. *Street Railway,* 100 Me. 86 at 93, speaking through Wiswell, C. J., we said:

"It is also undoubtedly true that, in order to create an estoppel, the conduct, misrepresentations or silence of the person claimed to be estopped must be made to or in the presence of a person who had no knowledge of the true state of facts, *and who*

*did not have the same means of ascertaining the truth as did the other party.* (Emphasis ours.) \* \* \* \* \* It is true that a person will not be estopped merely by his silence and failure to disclose facts that may be ascertained by an examination of public records, when the situation is not such as to place upon him the duty of making known the truth. In such a case he may rely upon the notice given to all by the public records. *Mason* v. *Philbrook,* 69 Maine, 57. But where the situation is such that it is his duty to speak, as where inquiries are made of him, or where, instead of merely remaining silent, he does some positive affirmative act, which would naturally have the effect of misleading or deceiving one, then the mere fact that the truth can be ascertained by an examination of the records, does not prevent the operation of the estoppel against him. *Hill* v. *Blackwelder,* 113 Ill. 283; *Robbins* v. *Moore,* 129 Ill. 30; *Morris* v. *Herndon,* 113 N. C. 237; *David* v. *Park,* 103 Mass. 501; Pom. Eq. Jur., Vol. 2, sec. 895; 11 A. & E. Encyl. of L., 2nd Ed., 436, and cases cited. *The law distinguishes between silence and encouragement.* While silence may be innocent and lawful, to encourage and mislead another into expenditures on a bad and doubtful title would be a positive fraud that should bar and estop the party. Knouff v. Thompson, 16 Pa. St. 364." (Emphasis ours.)

See also *Stearns* v. *Kerr et als.,* 134 Me. 352.

Here the invalidity of the tax sales and the consequent failure of title in the city of Bath, the defendant's grantor, was as easily ascertainable by the defendant as it was by the plaintiffs. The defendant could have searched the records of the city of Bath and ascertained the defect in the tax sale proceedings as easily as could the plaintiffs. The information was open to both alike. There is no evidence that the plaintiffs had searched the records and discovered or knew of the invalidity of the tax sales prior to the time when the defendant had made all of the expenditures which

he did make and which he now relies upon as creating the estoppel. On the other hand, it is clear that as early as 1934 the defendant knew that his title was at least doubtful, and that if he made improvements upon the property within the six years required under the betterments statute the plaintiffs might upset his title and that without reimbursement for the improvements he had made. It was for this reason and under advice of counsel that he obtained the quitclaim deed from Edward K. Thompson.

It is to be borne in mind that although the plaintiffs, taking by descent and not by purchase, had only such title as their mother had at the date of the death, *Stearns* v. *Kerr et al.*, 134 Me. 352, there is not a scintilla of evidence in the case of an estoppel against the mother. The defendant purchased from the city of Bath but two days prior to the mother's death. The case is void of evidence that the mother had knowledge that the purchase was even contemplated by the defendant or that it had been effected. Therefore, estoppel, if it exists, must be an estoppel which has arisen subsequent to the devolution of title from the mother to the plaintiffs. There is no evidence that they, or either of them, had any knowledge respecting the transfer from the city of Bath to the defendant until after it was fully accomplished.

While we are not prepared to state that circumstances could not exist under which the owner of land might be equitably estopped from asserting his title against the purchaser of a tax title thereto from the city, he certainly owes no active duty of protecting the purchaser of such tax title from his own folly in purchasing a void title and dealing with the land as an owner thereof. Knowledge that the purchaser has purchased the land, knowledge that he is in possession of the same, and casual knowledge that he is making improvements thereon does not cast upon the owner the duty to speak. As we said in *B. & M. Railroad* v. *Hannaford*

*Bros. et al.,* 144 Me. 306, 315: "Silence may give rise to estoppel but only when there is a duty to speak." In that case we quoted with approval the following statement from 19 Am. Jur. 662:

> "There must be some element of turpitude or negligence connected with the silence or inaction by which the other party is misled to his injury. In other words, to give rise to an estoppel by silence or inaction, there must be a right and an opportunity to speak and, in addition, an obligation or duty to do so.
>
> The mere fact that another may act to his prejudice if the true state of things is not disclosed does not render silence culpable or make it operate as an estoppel against one who owes no duty of active diligence to protect the other party from injury."

As owners of the property by descent from their mother, the plaintiffs owed the defendant no duty to warn him that his title was or might be void or that they would or might assert their title against his. He had the same means of ascertaining the invalidity of his title that they had. As stated in *Rogers* v. *Street Railway, supra,* "The law distinguishes between silence and encouragement." In this case, there being no duty to speak, silence was innocent and lawful and no positive acts or words of the plaintiffs, or either of them, are shown by means of which the defendant was encouraged in any way to act to his damage. As we said in *B. & M. Railroad* v. *Hannaford Bros. et al., supra,* quoting from 19 Am. Jur. 855, Sec. 200:

> "The rule is well established that it is a question of law for the court, in any proceedings, even though the case may involve a trial by jury, whether the facts constitute an estoppel, if the facts are undisputed."

In this case, taking every fact most favorably for the defendant, it was an error of law to find that the plaintiffs, or

either of them, were estopped from setting up their title as against the defendant. There was no evidence in the case of facts sufficient to create an estoppel.

It was urged in argument that the length of time which the plaintiffs allowed to elapse before they asserted their title made it inequitable for them to assert the same. The statute of limitations gave them a full period of twenty years within which to assert their title. They had as much right to assert it on the last day of the twenty years allowed them within which to bring their action as they did upon the first day after the disseizin. The measure of time being prescribed by statute, taking the full statutory time allowed cannot in and of itself be the basis of an estoppel. The only penalty to which mere delay subjects a *disseizee* is that the defendant may become entitled to recompense for betterments under R. S. (1944), Chap. 158, Sec. 20 et seq. Section 20 provides:

> "When the demanded premises have been in the actual possession of the tenant or of those under whom he claims for 6 successive years or more before commencement of the action, such tenant shall be allowed a compensation for the value of any buildings and improvements on the premises made by him or by those under him whom he claims, to be ascertained and adjusted as hereinafter provided."

If the plaintiffs, or either of them, were estopped it must be because of action taken by them or failure to act by them after the title descended to them. We hold that there was no evidence of either action or inaction upon their part which was sufficient to create an estoppel. It was an error of law on the part of the referee in each case to find estoppel and the exceptions to the action of the Justice of the Superior Court in rejecting the reports of the referee must be overruled.

We are not unmindful of the fact that the title of Perry L. Thompson was in no way affected by Edward K. Thompson's conveyance of all of his right, title and interest in and to a specific portion of the common land to the defendant. After that conveyance Perry was still the owner of an undivided half interest in the *whole* tract. *Soutter* v. *Atwood,* 34 Me. 153; *Soutter* v. *Porter,* 27 Me. 405, 416-17; *Duncan* v. *Sylvester,* 24 Me. 482; *Bigelow* v. *Littlefield,* 52 Me. 24; *Hutchinson* v. *Chase,* 39 Me. 508, 513; 14 Am. Jur. 151, Sec. 86. The defendant having disseized him thereof, he could have brought his sole action against the defendant to recover his undivided interest in the whole. R. S. (1944), Chap. 158, Secs. 9 and 10. Instead of bringing a sole action to recover his undivided interest in the whole, he brought two actions, (1) a sole action to recover an undivided half of the specific parcel conveyed by his co-tenant, Edward, to the defendant and, (2) a joint action with Edward to recover the remainder of the land. Under the rule relative to the splitting of actions, one who is disseized of an entire single parcel of land should not bring successive or simultaneous actions against the same disseizor to recover possession of separate parcels making up the whole when he could recover the whole in a single action. The rule against splitting a cause of action applies to actions for the recovery of land. Consequently, a party claiming title to a single undivided tract or parcel of land cannot maintain different actions against the same defendant to recover different portions thereof. 1 C. J. S. 1339, Sec. 105, 1 C. J. 1120, Sec. 304, *Dils* v. *Justice,* 127 S. W. (Ky.) 472; *Craig et al.* v. *Broocks,* 127 S. W. (Tex.) 572, *Roby* v. *Eggers,* 29 N. E. (Ind.) 365. The defendant, however, may waive the enforcement of the rule against splitting the cause of action and such a waiver will be presumed unless timely and proper objection is made. 1 C. J. S. 1312, Sec. 102 g. The rule relative to waiver is well stated by the court in *Mayfield* v. *Kovac,* 41 Ohio App. 310, 181 N. E. 28, 30:

> "However, we think that it is equally well established by the authorities that the rule prohibiting the splitting of a cause of action is primarily for the benefit of the defendant, and that he may waive the same, and that, where two actions are brought when but one should have been brought, and the person against whom they are brought fails to interpose in the second action, and at the earliest opportunity, a plea in bar, or otherwise object to the trial of such action, and submits the case upon the merits, he will be held to have impliedly consented to the splitting of said single cause of action. Fox v. Althorp, 40 Ohio St. 322; Georgia Ry. & Power Co. v. Endsley, 167 Ga. 439, 145 S.E. 851, 62 A.L.R. 256; Southern Pac. Ry. Co. v. United States (C. C. A.) 186 F. 737; Louisville Bridge Co. v. L. & N. R. Co., 116 Ky. 258, 75 S.W. 285; Cassidy v. Berkovitz, 169 Ky. 785, 185 S.W. 129."

In this case the defendant by pleading the general issue to both actions, agreeing to their reference under rule of court and proceeding to a joint trial of both actions on the merits waived any objection that he had to the splitting of the cause of action. The rendition of judgment for the plaintiff, Perry L. Thompson, in both actions will give him no greater interest in the land or different title therein against the defendant then he would have were he to recover an undivided half of the whole tract in a sole action brought by him against the defendant.

The foregoing observations as to the effect of Edward K. Thompson's deed and the splitting of his cause of action by Perry L. Thompson are made in the interest of clarification and in order that the *ratio decidendi* of this opinion may not be misconstrued. In holding that the present actions may be maintained we do not even by implication intimate that a conveyance of a specific portion of a single parcel of land by one tenant in common by metes and bounds *in and of itself* creates any *legal title* in the premises in his grantee,

or that Perry L. Thompson is a tenant in common *with the defendant* in the parcel quitclaimed to him by Edward. Nor do we intimate that the co-tenant of such grantor may, *as of right* split his cause of action and enforce the same by simultaneous actions to recover separate portions of the common property when he is disseized of the whole parcel by a single defendant. It is only because the present defendant failed to take advantage of the unwarranted splitting of his cause of action by Perry L. Thompson at the first opportunity therefor, and proceeded to a simultaneous reference and trial of both actions on the merits that we hold that the separate actions may now be maintained. We suggest that the proper procedure under facts similar to those in this case and one that might well be adopted by the careful practitioner would be either (1) to bring separate real actions in the name of each plaintiff to recover an undivided half of the whole tract of land which descended to them from their mother, or (2) to bring a joint action in the names of both plaintiffs to recover the same. In such event, and under proper pleadings by the defendant, the parties could make certain that their respective rights would be determined as a matter of right.

The exceptions must be overruled. Entry in each case to be,

*Exceptions overruled.*