February 8, 1993
UNITED STATES COURT OF APPEALS
For The First Circuit

No. 92-1164

DIVERSIFIED FOODS, INC., et al.,

Plaintiffs-Appellants,

v.

THE FIRST NATIONAL BANK OF BOSTON, et al.,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella and Boudin, Circuit Judges,

and Keeton,* District Judge.

Richard E. Poulos with whom John S. Campbell, Poulos, Campbell &

Zendzian, P.A., Daniel G. Lilley and John A. McArdle were on brief for

appellants.
William J. Kayatta, Jr., with whom Peter W. Culley, Catherine R.

Connors and Pierce, Atwood, Scribner, Allen, Smith & Lancaster were on

brief for appellees.

February 8, 1993

* of the District of Massachusetts, sitting by designation.

BOUDIN, Circuit Judge. In this case the district court

dismissed a suit brought under the Bank Holding Company Act,

12 U.S.C. 1972, on the ground that it was barred by res

judicata. The prior litigation, held to bar the new federal

action, was a state-court suit brought by the same plaintiffs

against the same defendants and decided in favor of the

latter. The disappointed plaintiffs now appeal, urging on

several grounds that res judicata does not properly apply.

In full agreement with the district court, we affirm its

decision.

The procedural history of the two cases is complex and

intertwined but a brief summary will suffice at the outset.

Diversified Foods, Inc., and its operating subsidiary New

England Sales, Inc. (collectively, "the borrowers"), were

engaged in a specialized form of wholesale distribution of

goods. In financing their activities, they entered into

various borrowing arrangements with First National Bank of

Boston and its Maine subsidiary Casco Northern Bank

(collectively, "the banks"). The arrangements, at least in

the borrowers' view, contained terms restricting their

ability to obtain alternative sources of financing.

During 1988, the borrowers first sought to expand their

business and then suffered large losses. They attribute this

reversal of fortune to the failure of the banks to provide

adequate credit under the borrowing arrangements. Claiming

-2-

multimillion dollar damages, the borrowers on August 21,

1989, brought suit against the banks in Maine Superior Court,

asserting various state-law tort and contract claims. The

complaint, as later amended in 1990, included the charge that

the banks violated an implied covenant of good faith by

imposing "unreasonable restrictions so as to prevent the

[borrowers] from obtaining alternative financing." Discovery

in the state case proceeded during 1989 and 1990.

On September 14, 1990, while the state case was

proceeding, the borrowers brought the present action against

the banks based on the anti-tying provisions of the Bank

Holding Company Act, 12 U.S.C. 1972(1). The new federal

claims were based, it appears, on information obtained

through discovery in the state case. The borrowers say that

the new claims were asserted in a separate action in a

different court because at that time the borrowers held the

view (contrary to two circuit decisions) that federal courts

have exclusive jurisdiction over claims under section 1972.1

1Two weeks before filing the federal complaint, the
borrowers moved to amend their state complaint to charge that
the banks had breached their duty of good faith by
"unreasonable, illegal, and anticompetitive" restrictions on
alternative financing. Shortly after the federal complaint
was filed, the banks opposed the state amendment. When the
borrowers responded that the federal claims were not being
asserted in the state case, the state court allowed the
amendment, striking the words "illegal" and
"anticompetitive."

-3-

When the banks answered the federal complaint on October

24, 1990, they included as a defense the assertion that the

borrowers "have improperly split their causes of action,

having previously filed in another court another complaint

arising out of the same transaction or series of

transactions." Thereafter, the banks resisted the borrowers'

efforts in January 1991 to introduce the state claims into

the federal action by amendment of the federal complaint or

to delay the state proceedings. The banks did agree to have

discovery in either case treated as if taken in both.

On April 18, 1991, the Maine Superior Court granted

summary judgment in favor of the banks, a decision later

affirmed on appeal. Diversified Foods, Inc. v. First Nat'l

Bank, 605 A.2d 609 (Me. 1992). The banks then moved for

summary judgment in the federal action on grounds of res

judicata, and the district court granted the motion on

January 9, 1992. A belated attempt by the borrowers to

reopen the state case to add the federal claims was rejected

by the state court, and this action was also affirmed on

appeal. Id. The borrowers then pursued this appeal in the

federal case.

In this court the borrowers first argue that federal

courts have exclusive jurisdiction over claims under the Bank

Holding Company Act's anti-tying provisions. Therefore, they

argue, res judicata cannot properly derive from the state

-4-

court judgment because they could not have included the

federal claims in their state case. We need not decide

whether the conclusion would follow if the premise were

sound, for the premise is mistaken. We follow two circuits

and several other courts that uniformly hold that state

tribunals have concurrent jurisdiction over section 1972

claims. Cuervo Resources, Inc. v. Claydesta Nat'l Bank, 876

F.2d 436 (5th Cir. 1989); Lane v. Central Bank, N.A., 756

F.2d 814 (11th Cir. 1985).2

The Bank Holding Company Act provides that anyone

injured by a violation of section 1972 may sue "in any

district court of the United States," admittedly making no

reference to state courts. 12 U.S.C. 1975. But it is now

settled that there is a presumption in favor of concurrent

jurisdiction, so that state courts may entertain federal

civil claims as a matter of course "absent provision by

Congress to the contrary or disabling incompatibility"

between the federal claim and state court jurisdiction. Gulf

Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 477-78

(1981). Here there is no explicit bar to state-court

jurisdiction and the subject matter is hardly beyond the

2Several state courts have reached the same conclusion.
See United Central Bank, N.A. v. Kruse, 439 N.W.2d 849 (Iowa

1989); Waite v. Banctexas-Houston, N.A., 792 S.W.2d 538 (Tex.

Ct. App. 1990).

-5-

competence of state courts, which routinely consider claims

under their own antitrust laws.

Of course, the resemblance to antitrust law cuts both

ways, providing the borrowers' best argument for exclusive

federal jurisdiction. Section 1972 is a blunter version of

section 3 of the Clayton Act, 15 U.S.C. 14, and with

qualifications courts use Clayton Act precedents in applying

section 1972. E.g., Swerdloff v. Miami Nat'l Bank, 584 F.2d

54, 58-59 (5th Cir. 1978). In empowering federal courts to

hear Clayton Act cases, Congress made no reference to state-

court jurisdiction, see 15 U.S.C. 15, and it is well

settled (by judicial construction) that federal antitrust

claims may be asserted only in federal court. Blumenstock

Bros. Advertising Agency v. Curtis Pub. Co., 252 U.S. 436,

440 (1920). The borrowers urge that the same gloss be

applied to the Bank Holding Company Act.

Exclusive federal-court jurisdiction over antitrust

claims, although a firmly rooted rule, is the product of

reasoning that the Supreme Court no longer applies in new

matters. Like baseball's judicial "exemption" from the

antitrust laws, see Flood v. Kuhn, 407 U.S. 258, 283-84

(1972), the result persists but is not extended. This is the

clear message of Tafflin v. Levitt, 493 U.S. 455, 459-60

(1990), where the Supreme Court affirmed the state courts'

concurrent jurisdiction over civil RICO claims and rejected

-6-

the same Clayton Act analogy offered here. Indeed, the RICO

statute uses jurisdictional language quite similar to the

Bank Holding Company Act, compare 18 U.S.C. 1964(c) with 12

U.S.C. 1975, and was passed by the same Congress in the

same session. Tafflin offers the coup de grace to the

borrowers' argument for exclusive jurisdiction.3

Once that issue is removed, the application of res

judicata is straightforward in the present case. The branch

of that doctrine of concern here, known for many years as

merger (if the plaintiff had won the first case) and bar (if

the plaintiff had lost), has lately been rechristened "claim

preclusion" in the modern functional style. See Roy v.

Jasper Corp., 666 F.2d 714, 717 (1st Cir. 1981). More

important, the doctrine has evolved subtly, although not

uniformly in all jurisdictions, to employ a functional "same

transaction" test, as an overlay to the traditional inquiry

whether the "cause of action" in the two cases is the same.

Maine, whose earlier judgment is invoked here as res

judicata, employs this test, which is therefore binding on

3We give little weight to occasional references by
Congress, in the legislative history of section 1972, to
suits in "federal" courts. See, e.g., 2 One-Bank Holding

Company Legislation of 1970: Hearings Before the Senate

Comm. on Banking and Currency, 91st. Cong., 2d Sess. 966

(1970) (statement of Sen. Bennett) (referring to "the process
of suit through the Federal courts . . ."). These
references, if any intent is attributable to them, appear to
reflect the natural assumption that Bank Holding Company Act
claims would usually be litigated in federal forums.

-7-

us. See Migra v. Warren City School Dist. Bd. of Educ., 465

U.S. 75, 85 (1984).

In Currier v. Cyr, 570 A.2d 1205 (Me. 1990), the Maine

Supreme Judicial Court summarized the rule it follows in

deciding whether new claims are barred because they were or

"might have been" litigated in the prior case:

Maine has accepted what is known as a
"transactional test" of cause of action,
which defines "the measure of a cause of
action as the aggregate of connected
operative facts that can be handled
together conveniently for purposes of
trial."

Id. at 1208 (quoting Gurski v. Culpovich, 540 A.2d 764, 766

(Me. 1988)). Accordingly, so long as the parties are the

same in both cases and a final judgment was entered in the

prior action, "a subsequent suit that arises out of the same

operative facts shall be barred even though the second suit

relies upon a legal theory not advanced in the first case,

seeks different relief than that sought in the first case,

and involves [different] evidence . . . ." Id. (emphasis

added).

In the present case the borrowers' federal claims under

section 1972 unquestionably arise out of "the same operative

facts" as the state claims earlier asserted by the borrowers.

They themselves, in an unsuccessful attempt to add the state

claims to the federal case based on pendant jurisdiction,

told the district court that "[t]he facts forming the basis

-8-

for the state claims are the same facts which form the basis

of the pending [federal] action . . . ." A comparison of the

two complaints shows that the factual allegations

substantially overlap. Further, the central tying allegation

in the federal complaint--that the banks restricted the

borrowers' access to alternative sources of credit--was one

of the express claims in the state action.

In this court, the borrowers make only a half-hearted

effort to distinguish the two complaints under the Maine

transactions test for res judicata, and we think the point

needs no further discussion. The borrowers' central

arguments in resisting res judicata, exclusive jurisdiction

aside, are variants on a single theme. They argue in

substance that the banks themselves strove to keep the two

actions separate, resisted the assertion of state claims in

the federal case and vice versa, and now use the judgment in

the suit first decided to prevent litigation of the other on

the merits. This effort to resist consolidation, say the

borrowers, should estop the banks from invoking res judicata

or should be treated as a waiver of the defense.

We accept arguendo the borrowers' version of events,

although it is unclear whether the banks followed a conscious

strategy or merely opposed seriatim the successive demands of

an opponent. But in either event we do not see how the

gravamen of the charge--the banks' resistance to

-9-

consolidation of the federal and state claims--gives rise to

an estoppel of the banks. The banks are not alleged to have

said anything untrue. Their position throughout has been

consistent. There is not even a valid charge of concealment

or surprise: the banks' answer in the federal case gave fair

warning of the risk of res judicata by asserting a claim

splitting defense, expressly referring to the borrowers'

state suit "arising out of the same transaction or series of

transactions."

As for waiver, it may be assumed that Maine, consistent

with general law on the subject, would disallow res judicata

if the "parties have agreed in terms or in effect that the

plaintiff may split his claim, or the defendant has

acquiesced therein." Calderon Rosado v. General Electric

Circuit Breakers, Inc., 805 F.2d 1085, 1087 (1st Cir. 1986)

(quoting Restatement (Second) of Judgments 26(1)(a)).4

Indeed, in Thompson v. Gaudette, 148 Me. 288, 92 A.2d 342

(1952), the Maine Supreme Judicial Court said that the rule

against splitting a cause of action will be waived unless the

defendant asserts it "at the earliest opportunity." 92 A.2d

at 348 (quoting Mayfield v. Kovac, 41 Ohio App. 310, 181 N.E.

4In Calderon Rosado this court rejected on waiver

grounds a res judicata defense in a federal action. The

defendant had earlier agreed to the plaintiff's voluntary
dismissal "with prejudice" of a wrongful discharge claim
under Puerto Rican law brought in a local court, "seemingly
acceding to plaintiff's desire to litigate in federal court"
under a federal statute. 805 F.2d at 1086.

-10-

28, 30 (1931)). In our case, the banks at the outset pleaded

claim-splitting in their answer and maintained that position

throughout the case.

Courts could, we suppose, disallow the claim preclusion

defense wherever two suits are brought and the defendant

thereafter resists their consolidation. But when a plaintiff

has chosen to bring two lawsuits in the same time frame

relating to the same operative facts, it is hard to see why

the defendant should not be able to resist consolidation on

proper grounds, such as undue delay. If the resistance is

unjustified, the plaintiff may normally litigate that issue

within the lawsuit. In fact, the borrowers here did seek to

add the federal claims to the state action; but they did so

only after summary judgment was granted on the state claims.

Not surprisingly, the Maine Supreme Judicial Court said that

this effort came too late. Diversified Foods, Inc., 605 A.2d

at 616.5

Finally, the borrowers suggest that, estoppel and waiver

issues to one side, it would be inequitable to permit the res

judicata defense. They argue that their decision to bring a

separate federal suit, instead of adding the federal claims

5The borrowers were only slightly more diligent in
seeking to add the state claims to the federal case. In late
January 1991, they moved to amend the federal complaint to
assert the state claims and to stay the state action. This
occurred, however, after the close of state discovery and on
the eve of the banks' deadline for filing summary judgment
motions.

-11-

to the state case, was based on a good faith belief that

exclusive federal-court jurisdiction prevented that course.

Res judicata is a judge-made doctrine resting on

considerations of policy, and doubtless there is room for

equitable adjustments. See generally 18 Charles A. Wright,

Arthur R. Miller & Edward H. Cooper, Federal Practice and

Procedure 4415 (1981). But in this case the mistaken

belief in exclusive federal jurisdiction was formed in the

face of two circuit decisions to the contrary.

Thus, the case for an equitable departure from res

judicata is very weak. True, the banks played an aggressive

hand, but litigation is inherently aggressive. Further, the

borrowers created their own dilemma by bringing the two

actions separately, ignoring the concurrent-jurisdiction

precedents directly in point. Then, in the teeth of the

warning furnished by the banks' claim splitting defense, the

borrowers failed to assert the federal claims in the state

case until after that case had been lost. Like the Maine

Supreme Judicial Court, we see no equitable basis for

resurrecting claims that the borrowers themselves allowed to

expire.

Affirmed.

-12-