STATE OF MAINE                              BUSINESS & COUNSUMER DOCKET
CUMBERLAND, ss.                             DOCKET NOS. BCD-RE-18-05
                                                        BCD-RE-18-06


IMAD KHALIDI, et al.,                    )
                                         )
          Plaintiffs,                    )
                                         )
     v.                                  )     **COMBINED ORDER ON PENDING**
                                         )     **MOTIONS**
TOWN OF CAPE ELIZABETH,                   )
                                         )
          Defendant.                     )

Both parties have brought motions asking this Court to reconsider, alter, or amend its Order denying their respective motions for summary judgment. Plaintiffs further ask the Court to reconsider its decision to dismiss Count II of their Complaints as unripe; in the alternative, Plaintiffs move for leave to amend their Complaints to add additional allegations as to the ripeness of Count II. The Court heard oral argument on the motions on May 7, 2019. James Monteleone, Esq. appeared for Plaintiffs and Susan Driscoll, Esq. appeared for the Defendant Town of Cape Elizabeth ("Cape Elizabeth," or the "Town").

BACKGROUND

This case arises out of a dispute over the Town's right to accept what the parties refer to as the Pilot Point Section of Surf Side Avenue (the "Pilot Point Section"). Surf Side Avenue is a so-called "paper street," or proposed, unaccepted way. The Shore Acres Land Company recorded the Shore Acres subdivision plan depicting the Pilot Point section on April 10, 1911 at the Cumberland County Registry of Deeds (the "Registry").

The Town has no fee interest in any part of Surf Side Avenue and has never accepted public rights over the Pilot Point Section. However, the Town has taken formal action pursuant to statutory authority to extend the Town's right to either accept, or vacate its right to accept, the

1

incipient dedication of the Pilot Point Section at a later date. On September 8, 1997, the Town council voted to extend the Town's right to accept certain paper streets within the Town for a period of twenty years. Pursuant to that vote, the Town recorded a notice of its reservation of rights in the Registry (the "1997 Notice"). On October 5, 2016, the Town voted to extend its right to accept certain paper streets within the Town for a further (and final) twenty-year period. *See* 23 M.R.S. § 2032(2).

The owners of the lots through which the Pilot Point Section passes (several—but not all—of whom are plaintiffs in this lawsuit) and their predecessors-in-interest have essentially used the Pilot Point Section as their "backyards" with minimal development consistent with what one might expect to see in a backyard. In these two consolidated cases, Plaintiffs seek a declaratory judgment declaring that the Town's right to accept the Pilot Point Section has lapsed (Count I) and that if the Town's right has not lapsed, and it is accepted, that the Town is prohibited from altering the location, construction, or usage of the proposed roadway to become a walking trail (Count II).

On February 19, 2019, this Court entered its Order on Cross-Motions for Summary Judgment (the "Summary Judgment Order") denying both motions for summary judgment. The Court concluded that there are genuine factual issues regarding Plaintiffs' predecessors-in-interest's use of the Pilot Point Section material to a legal determination of whether Cape Elizabeth's ability to accept the Pilot Point Section has lapsed. The instant motions do not ask the Court to reconsider this conclusion.

Instead, Plaintiffs ask the Court to reconsider three other legal conclusions: first, that the elements of common law abandonment of an easement cannot prove that the public's right to accept a proposed way has lapsed; second, that Count II is unripe; and third, that evidence of uses in the Pilot Point Section after the recording of the 1997 Notice is not relevant to the lapse analysis.

The Town asks the Court to reconsider its conclusion that Count I is not barred by the relevant six-year statute of limitations.14 M.R.S. § 752. The Court considers each party's motion in turn.

## STANDARD OF REVIEW

Under M.R. Civ. P. 7(b)(5), a motion for reconsideration "shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented." "Rule 7(b)(5) is intended to deter disappointed litigants from seeking 'to reargue points that were or could have been presented to the court on the underlying motion.'" *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714 (quoting M.R. Civ. P. 7(b)(5) advisory committee's notes to 2000 amend., 3A Harvey & Merritt, *Maine Civil Practice* 270 (3d, 2011 ed.)). "A motion for reconsideration of the judgment shall be treated as a motion to alter or amend the judgment." M.R. Civ. P. 59(e). A trial court's ruling on a motion for reconsideration is reviewable for an abuse of discretion. *Shaw*, 2003 ME 153, ¶ 12, 839 A.2d 714.

## DISCUSSION

As they conceded at the oral argument, Plaintiffs not only could have, but in fact did, argue that the common-law elements for the abandonment of an easement also apply to the lapse of the public's right to accept a proposed way. (Summ. J. Order 10-12.) Plaintiffs' re-argument on this issue does not bring to the Court's attention any error, omission, or new material. It merely rehashes the same reasoning that the Court rejected in its Summary Judgment Order. Plaintiffs may be disappointed by the Court's conclusion, and believe in good faith that it was legal error, but this is not the kind of "error" contemplated by Rule 7(b)(5). *See* M.R. Civ. P. 7(b)(5) advisory committee's notes to 2000 amend., 3A Harvey & Merritt, *Maine Civil Practice* 270 (3d, 2011 ed.). The Court declines to revisit its conclusion that the test for whether the public's right of incipient dedication has lapsed announced in *Ocean Point Colony Trust, Inc. v. Town of Boothbay*, 1999

3

ME 152, 739 A.2d 382 is distinct from the test for abandonment of an easement. As explained in the Summary Judgment Order, different considerations require a different test. (Summ. J. Order 11.) For example, an element of abandonment of an easement is a history of nonuse. *Phillips v. Gregg*, 628 A.2d 151, 153 (Me. 1993). Until a municipality accepts a paper street there is nothing for the public to use, so a history of nonuse cannot be relevant to whether the municipality's right to accept the paper street has lapsed. As the Court concluded in its Summary Judgment Order, even assuming that the other element of abandonment—an act or omission evincing a clear intent to abandon—were relevant to the lapse analysis, the Plaintiffs have not presented any evidence that satisfies this element. (Summ. J. Order 12.) In sum, the Court declines to reconsider its conclusion that the elements of common law abandonment of an easement cannot prove that the public's right to accept a proposed way has lapsed.

The new material presented by Plaintiffs as to the ripeness of Count II relates to steps taken by the Town after or during the briefing on the summary judgment motions. Thus, it is not "new material *that could not previously have been presented*." M.R. Civ. P. 7(b)(5) (emphasis added). Furthermore, while the material presented is further evidence of the Town's intent to develop the Pilot Point Section as a public walking trail, this evidence alone does not alter the Court's ultimate legal conclusion: "that the issue of the Town's hypothetical, future use of an easement that it may or may not accept is not ripe." (Summ. J. Order 8.) Plaintiffs claim that the Court as a matter of law can determine whether an "unimproved walking trail" over the Pilot Point Section is a permissible use of Cape Elizabeth's hypothetical easement that it may never accept, but the issue is not that simple. A walking trail is clearly distinguishable from the City of Rockland's impermissible use of the proposed way it accepted in *Rockland v. Johnson*, 267 A.2d 382, 385 (Me. 1970). This is a far more fact-bound inquiry than the issue the Law Court held was ripe in

4

*Me. Pub. Serv. Co. v. Pub. Utils. Com.*, 524 A.2d 1222, 1226 (Me. 1987), where the Law Court wrote in dicta that a declaratory judgment would "only aid the Commission in making use of its lawful regulatory powers." *Id.* Here, any ruling on Count II would be *only* an advisory opinion. Far from clarifying anything, it would invite future litigation if and when the Pilot Point Section were ever accepted and developed. Cape Elizabeth would argue that its use was within the scope of what the Court ruled permissible and Plaintiffs would argue it was not. The Court dismissed Count II without prejudice so that that argument could be had, if ever, in due course when the facts were established and no longer speculative.

For similar reasons, the Court denies Plaintiffs' motion to amend their Complaints. Rule 15(a) provides that after a responsive pleading has been served a party may amend its pleading only by leave of court, and leave shall be freely given when justice so requires. M.R. Civ. P. 15(a). Nonetheless, "[U]ndue delay, bad faith, undue prejudice, or futility of amendment are grounds for denying a motion to amend." *Paul v. Town of Liberty*, 2016 ME 173, ¶ 9, 151 A.3d 924 (quotation omitted). The decision of whether to give leave to amend is committed to the sound discretion of the trial court. *Bangor Motor Co. v. Chapman*, 452 A.2d 389, 392 (Me. 1982). First, the Court finds that Plaintiffs' amendment would result in undue delay and Plaintiffs did not offer a satisfactory explanation for why the motion was only brought now, after an adverse ruling on summary judgment. *See Diversified Foods, Inc. v. First Nat'l Bank*, 605 A.2d 609, 616 (Me. 1992) ("undue delay removes any presumption in favor of allowing amendment") (quotation marks omitted). The supplemental paragraphs in Plaintiffs' proposed amended Complaints allege facts that could have been alleged when the Complaints were originally filed or anytime thereafter. More importantly, this exact issue has now been extensively litigated in two separate motions for summary judgment, each with its own statement of material facts, opposing statement of material

facts, and additional statement of material facts. Put simply, the time for allegations has passed, and the time for adducing evidence on this issue has now likewise come and gone. *See id.* ("when the summary judgment has been entered, the court should be reluctant to allow the addition of a new cause of action, particularly when the delay is unexplained"), *see also Holden v. Weinschenk*, 1998 ME 185, ¶¶ 6-8, 715 A.2d 915. Second, Plaintiffs' failure to adduce all evidence in support of its cause of action at the summary judgment stage cannot be remedied by amendment because the prejudice to the Town in having to relitigate this issue would be undue. Harvey & Merritt, *Maine Civil Practice*, § 15:2, at 480 (3d, 2011 ed.) ("If the moving party is not acting in bad faith or for delay, the motion will be granted *in the absence of undue prejudice to the opponent*.") (emphasis added). Finally, the Court concludes that Plaintiffs' proposed amendments would be futile. Even taken as true, these allegations make the legal issue posed in Count II no more concrete, nor withholding judicial decision on the issue any more burdensome for Plaintiffs. *Johnson v. Crane*, 2017 ME 113, ¶ 9, 163 A.3d 832. They also make the legal issue no less speculative. *See Clark v. Hancock Cty. Comm'rs*, 2014 ME 33, ¶ 19, 87 A.3d 712. For the reasons explained above, even in light of these supplemental allegations, any ruling by this Court on Count II would be an advisory opinion and invite further litigation if and when the Pilot Point Section is ever accepted and developed.

Finally, Plaintiffs request the Court revisit its conclusion that evidence of uses in the Pilot Point Section after the recording of the 1997 Notice is not relevant to the lapse analysis. This issue was not a focus at the oral argument on the summary judgment motions and was only mentioned in passing in the written memoranda. It was relegated to a footnote in the Summary Judgment Order, in part because the Court assumed that the parties agreed that Plaintiffs would have to prove that the Town's right of incipient dedication had lapsed before the recording of the 1997 Notice

6

under *Ocean Point Colony Trust, Inc.*, 1999 ME 152, 739 A.2d 382. (Summ. J. Order 9, 15 n. 6.) This assumption seems to have been in error. The Court therefore concludes that Plaintiffs' motion for reconsideration is proper under M.R. Civ. P. 7(b)(5).

Upon reconsideration, the Court nonetheless declines to deviate from its original conclusion. First, the Court still considers this to be the holding of *Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶ 7, 739 A.2d 382. With that being said, the Court acknowledges that this issue was not squarely before the Law Court in that case because plaintiffs presented no evidence "to establish that the paper street has been used in a manner inconsistent with the premise that the Town may later decide to accept the proposed way" over any period, before or after the defendant Town recorded its section 3032(2) notice.[1] *Id.* ¶ 10. From a practical perspective, in *Ocean Point Colony*, summary judgment was entered in the Town's favor very soon after it recorded its section 3032(2) notice, leaving a very short post-notice period for plaintiffs to establish inconsistent uses in any event. *Id.* ¶¶ 1-4. By contrast, in this case, roughly twenty-two years have passed since Cape Elizabeth filed its section 3032(2) notice—sufficient time for an inconsistent use to satisfy the statutory period for adverse possession. *C.f. Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶¶ 9-10, 739 A.2d 382. Notwithstanding the distinguishable procedural posture of *Ocean Point Colony*, the language of that case is couched exclusively in terms of pre-notice lapse: "Ocean Point argues that . . . the Town's right to accept the proposed street *lapsed before the town filed its notice* to except the street from deemed vacation pursuant to 23 M.R.S.A § 3032 . . . ." *Id.* ¶ 1. Later, the *Ocean Point Colony* opinion provides:

> Ocean Point argues that the Town's right to accept the incipient dedication lapsed under common law because the Town did not accept the street within a reasonable time and 23 M.R.S.A. § 3032(2) applies only to those incipient dedications that

---

[1] I.e. a notice excepting a proposed, unaccepted way laid out in a subdivision plan recorded before September 29, 1987 from the operation of the time limitations for deemed vacation for twenty years. 23 M.R.S. § 3032(1-A), (2).

have not *already* lapsed. We agree that section 3032(2) only applies to those incipient dedications that have not lapsed pursuant to common law.

*Id.* ¶ 7 (emphasis added). Given this language from the Law Court's opinion, this Court is persuaded that a plaintiff is required to prove that a municipality's right to accept a paper street had already lapsed prior to the recording of a section 3032(2) notice.

Second, the Court is persuaded that this result is consistent with the legislative purpose of 23 M.R.S. §§ 3031-3034, as announced in section 3035: "enhancing the merits of title to land by eliminating the possibility of ancient claims to proposed, unaccepted, unconstructed ways that are outstanding on the record but unclaimed."

In other words, these statutes are designed to bring clarity by eliminating, through deemed vacation, those paper streets that municipalities were either unaware of or had no interest in accepting. *See id.* §§ 3027 and 3027-A, 3032-3033. However, the statutes also describe a process to be followed for those paper streets which, like the Pilot Point Section, a municipality may be interested in accepting in the future. Even in such cases, the reservation of rights is limited to a maximum period of forty years. *Id.* § 3032(2). Once the extension period allowed for pre-1987 incipient dedications expires in 2037, the doctrine of common law lapse of the right of incipient dedication will fade into obscurity in this State. *Id.* § 3031(1). All "ancient claims" will thereby be eliminated. Already, paper streets laid out in subdivision plans recorded after September 29, 1987 must be accepted within twenty years or are deemed vacated. *Id.*, *see also id.* § 3032(1-A). Pre-1987 dedications that were not accepted or reserved pursuant to a section 3032(2) notice have likewise already been deemed vacated. *Id.* § 3032.

Prior to the passage of these statutes, pursuant to the common law, municipalities were required to accept a paper street within a "reasonable time." *Ocean Point Colony*, 1999 ME 152, ¶ 9, 739 A.2d 382. However, under the case law, whether a reasonable time has passed is

8

determined not by how many years have gone by since the dedication but rather whether the paper street has been used by its possessors in a manner inconsistent with its future use as a way for some length of time, probably at least twenty years. *Id.* A reasonable time is thus determined on a case-by-case basis. *Id.*

*Ocean Point Colony* and 23 M.R.S. §§ 3031-3034 describe a staggered implementation of the new regime of deemed vacation to supplant common-law lapse, with "flag posts" put in at different points along the timeline to determine which doctrine is applicable. One such obvious flag post is September 29, 1987: only deemed (or voluntary) vacation, and not common law lapse, can extinguish a municipality's right to accept a paper street laid out in a subdivision plan recorded after that date.[2] 23 M.R.S. §§ 3027, 3027-A, 3031-3032.

The Court concludes that September 29, 1997—or more specifically, the date of any notice recorded by a municipality reserving its right of incipient dedication before that deadline—is another flag post for determining whether vacation or lapse is the relevant doctrine. *Id.* § 3032. By its plain terms, section 3032 deals exclusively with the concept of "deemed vacation" of paper streets laid out in subdivision plans recorded prior to September 29, 1987 and provides a mechanism by which a municipality can forestall that result by recording a section 3032(2) notice. *Ocean Point Colony* merely confirmed that the recording of such a notice could not revive incipient dedication rights that had already lapsed. To extend its holding to apply to claims of lapse that arise, accrue, or mature after the filing of a section 3032(2) notice would frustrate the legislative purpose of replacing the case-by-case lapse test with the stricter statutory doctrine of deemed vacation by extending the applicability of the lapse doctrine to the year 2037: landowners frustrated with a municipality's decision to preserve an incipient dedication from deemed vacation

---

[2] This is true not just because statutory law trumps the common law when there is a conflict, but also as a practical matter, because vacation is a stricter doctrine than lapse. *Bird v. Bird*, 77 Me. 499, 502, 1 A. 455, 456 (1885).

would be free to argue that the right had nonetheless lapsed over the reserved period. Such a result would frustrate the legislative purpose of replacing an uncertain common law test with a strict statutory one.

Finally, Plaintiffs argue that 23 M.R.S. § 3034(1) supports the proposition that a municipality's right of incipient dedication can lapse after a municipality records a section 3032(2) notice. Section 3034(1) provides:

> Action to compel removal. When any structure, for 20 years, has been continuously located, in whole or in part, within a proposed, unaccepted way laid out in a subdivision plan recorded in the registry of deeds, and lots have been sold with reference to this plan, no action may be maintained by any person to compel removal of the structure based upon the fact of its location within the proposed, unaccepted way. For the purposes of this section, person includes a corporation, partnership, governmental entity or other entity.
> Nothing in this section may be construed to restrict or affect private rights in a proposed, unaccepted way which come into existence under common law, in equity or under existing statutes. This section shall not be construed for any reason to extend the 20-year period set forth in this subsection.

The following subsection establishes that this protection "applies to structures existing and proposed, unaccepted ways laid out on subdivision plans recorded in registries of deeds before, on or after the effective date of this section," subject to exceptions not applicable here. *Id.* § 3034(2).

The problem with Plaintiffs' argument is that it conflates lapse as a common law doctrine with the purpose of section 3034. Section 3034 protects structures located in paper streets but is silent on the effect such protection has on a municipality's right to accept the paper street. The two concepts are not mutually exclusive; section 3034 could insulate a structure from an action to compel removal of the structure, and the municipality could nonetheless accept the paper street. In fact, as both parties explained at the oral argument on the instant motion, that is precisely what may happen in this case. Plaintiffs claimed that they will be able to prove that there are structures in the Pilot Point Section, some of which have been there over twenty years, including some which

10

hit the twenty-year mark after 1997. Cape Elizabeth responded that even if that is true, the nature of its intended use of the Pilot Point Section (should the Town ever accept it) can easily avoid those structures.

The Court's ruling that the relevant period for proving lapse is 1911 to 1997 does not implicate section 3034 at all. In order to prove that the Town's right of incipient dedication has lapsed, Plaintiffs must prove that it lapsed prior to 1997. Disputed factual questions regarding the historical use of the Pilot Point Section will answer that question. If the Town's right has not lapsed, and it accepts the Pilot Point Section, any action to compel removal of structures therein will be required to comply with section 3034(1).

Whether such structures are of sufficient number and magnitude as to render public use of the Pilot Point Section practical or even possible is separate from the issue of whether the Town's right to accept the Pilot Point Section has lapsed. In other words, section 3034 may offer the Plaintiffs an alternative mechanism by which to frustrate the Town's acceptance of the Pilot Point Section should it be proved at trial that the Town's rights have not lapsed. But it is not relevant to the issue of lapse per se, and does not stand for the proposition that lapse can be established after a municipality has reserved its right of incipient dedication by recording a section 3032(2) notice. The Court concludes that based on 23 M.R.S. §§ 3031-3035, after such a notice is recorded, the municipality can only lose the right through voluntary or deemed vacation, and not by lapse.

The purpose and function of a section 3032(2) notice also informs the Court's analysis of Cape Elizabeth's motion for reconsideration. The Town's motion asks the Court to reconsider just three sentences of its Summary Judgment Order that it argues are either internally inconsistent or inconsistent with the law.

The three sentences identified by the Town are the following:

11

[T]he 1997 Notice did not explicitly list the Pilot Point Section. Plaintiffs did not feel compelled to bring the instant litigation until the Town began to take preliminary, exploratory steps toward development of the Pilot Point Section, which did happen until 2016-17. 2016 was also the year that the Town voted to extend its right to accept proposed ways in the Town a further twenty years by recording a second notice in the Registry, this time explicitly listing Surf Side Avenue.

The Town argues that this quoted language implies that Count I was timely brought because the Plaintiffs were "excused" from constructive notice of the 1997 Notice until the second notice was filed in 2016. Upon reconsideration, the Court recognizes that this language could create such an impression, and takes this opportunity to clarify why the cause of action stated in Count I of the Plaintiffs' Complaint is not barred by the six-year statute of limitations for declaratory judgment actions. 14 M.R.S. § 752.

The Court's reference to the 1997 Notice and the Town's 2016 extension of its reservation of rights was not the basis of the Court's conclusion that Count I is timely under the six year statute of limitations, but was merely meant to contextualize why Plaintiffs filed their lawsuit in 2018 and not earlier. The main thrust of the Town's argument on summary judgment had been not that the lawsuit was untimely but rather that it was unripe.[3] By analogy to the "final decision rule" for appeals of government action brought pursuant to M.R. Civ. P. 80B & 80C, the Town argued that the Plaintiffs' cause of action could only accrue based on some action or decision by the Town: first, in 1997, when the Town council recorded the 1997 Notice; and second, if or when the Town ever decides to accept the Pilot Point Section. Under the Town's reasoning, each of these events opened (or would open) a six-year window; the former closed in 2003, the latter has yet to open.

The three sentences identified by the Town could imply that the Court was persuaded by this reasoning but decided that 2016, when the Town filed its second notice extending its right to accept the Pilot Point Section another twenty years, opened another six-year window. Alternatively, the reference to

---

[3] The Town does not ask the Court to reconsider its decision that the Plaintiffs' claim is ripe. (Summ. J. Order 7.)

12

when the Plaintiffs "felt compelled" to file their lawsuit could imply that the Court improperly concluded that a property owner's subjective decision could give rise to its cause of action. *See Bog Lake Co. v. Town of Northfield*, 2008 ME 37, ¶ 9, 942 A.2d 700.

To clarify, the Court disagrees with the Town that the Plaintiffs' cause of action is tied to municipal decision-making. *Bog Lake Co.* is distinguishable. In that case, the developer-plaintiff filed suit against the defendant-municipality in 2005 to challenge a municipal ordinance enacted in 1987 prohibiting development on some of plaintiffs' land. *Id.* ¶¶ 2-4, 8. The plaintiff challenged the defendant-municipality's decision, not its authority to take the action that it did, once it decided to develop the property in a manner inconsistent with the ordinance many years later. *Id.* ¶ 11, 14. Here, Plaintiffs are not challenging Cape Elizabeth's decision to reserve its right to accept the Pilot Point Section—they seek a declaratory judgment that Cape Elizabeth has no inchoate right in the Pilot Point Section today because that right has lapsed.

Cape Elizabeth characterizes the 1997 Notice as "put[ting] the world on notice that it claimed a right in Surf Side Avenue, which it then elected to extend pursuant to [statute]." (Def's Mot. Recon. 5.) The Court disagrees with this characterization. As explained above, notices recorded pursuant to section 3032(2) serve a limited purpose. The reservation of rights resulting from the filing of a section 3032(2) notice is a reservation of the right of incipient dedication from expiration by operation of deemed vacation. It does nothing to "save" an incipient dedication that has already lapsed. In other words, by filing the 1997 Notice, the Town was not claiming that its right to the Pilot Point Section had not lapsed, it was merely insulating the Pilot Point Section from deemed vacation under the presumption that the right had not lapsed.

The Plaintiffs' right to challenge that presumption did not accrue in 1997 or at any time before or since. The Town's inchoate right over the Pilot Point Section—the right to accept the paper street—

13

burdens the Plaintiffs' property every day, thereby accruing each day. See *Britton v. Dep't of Consrv'n*, 2009 ME 60, ¶¶ 18-20, 974 A.2d 303. The statute of limitations has thus not begun to run—nor will it, until (and if) the Town accepts the Pilot Point Section. *See Johnson v. Town of Dedham*, 490 A.2d 1187, 1189 (Me. 1985). To be clear, the Court does not decide whether Plaintiffs' claim is "a declaratory judgment action . . . bringing what is functionally, a quiet title action[,]" a proposition disputed by the parties. *See Welch v. State*, 2004 ME 84, ¶ 6 n.3, 853 A.2d 214. However, for purposes of determining when Plaintiffs' cause of action accrues, a quiet title action is much more analogous to Plaintiffs' cause of action than a Rule 80C challenge to government action. Plaintiffs seek a declaratory judgment as to the Town's right to accept the Pilot Point Section where it passes over their property today. The Town had that right since 1911 and after 1997, or it lost it at some point in the interim. This lawsuit will resolve that question. The recording of the 1997 Notice did not alter the analysis as to when and if that lapse occurred.[4] *See Ocean Point Colony Trust*, 1999 ME 152, ¶ 7, 739 A.2d 382. Therefore, it would be illogical to conclude that the filing of the 1997 Notice caused the Plaintiffs' cause of action to accrue.

In sum, on reconsideration, the Court declines to dismiss Count I of the Plaintiffs' Complaints as untimely.

By reason of the foregoing it is hereby ordered:

1. That Plaintiffs' motion to alter or amend the order on cross-motions for summary judgment is DENIED.

2. That Plaintiffs' motion to amend their Complaints is DENIED.

3. That Defendant's motion for partial reconsideration is DENIED.

---

[4] Although, as explained above, it did insulate the Pilot Point Section from lapse claims that arose or matured thereafter.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).


**Dated: May 22, 2019**                                     _____/s_____

                                                                      **M. Michaela Murphy**
                                                                      **Justice, Business and Consumer Court**

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & COUNSUMER DOCKET
DOCKET NOS. BCD-RE-18-05
BCD-RE-18-06

IMAD KHALIDI, et al.,                     )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )        ORDER ON CROSS-MOTIONS FOR
                                          )        SUMMARY JUDGMENT
TOWN OF CAPE ELIZABETH,                    )
                                          )
          Defendant.                      )

Pending before the Court are Plaintiffs' amended motion for summary judgment and

Defendant Town of Cape Elizabeth's (the "Town") motion for summary judgment on the two

virtually identical two-count Complaints for declaratory judgment in this consolidated matter. Oral

argument was heard on January 24, 2019. Plaintiffs were represented by John Shumadine, Esq.

and the Town was represented by Susan Driscoll, Esq.

### FACTS

This case arises out of a dispute over the Town's right to accept what the parties refer to as

the Pilot Point Section of Surf Side Avenue (the "Pilot Point Section"). Surf Side Avenue is a so-

called "paper street," or proposed, unaccepted way.[1] The Shore Acres Land Company recorded

the Shore Acres subdivision plan (the "Plan") on April 10, 1911 at the Cumberland County

Registry of Deeds (the "Registry"). (Pl's Supp'g S.M.F. ¶ 1; Def's Supp'g S.M.F. ¶ 1.) Depicted on

the subdivision plan is "Surf Side Avenue," running in a north-easterly direction along the southern

border of the subdivision; south of Surf Side Avenue is the Atlantic Ocean. (Ex. A to Pl's Supp'g

S.M.F.) As depicted on the Plan, Surf Side Avenue borders lots 1-10 along its western branch and

---

[1] Although paper streets can be either constructed or unconstructed, the Pilot Point Section is unconstructed. (Pl's Supp'g S.M.F ¶ 8.) *See Fournier v. Elliott*, 2009 ME 25, ¶¶ 15, 20, 966 A.2d 410; 23 M.R.S. § 3032.

1

lots 44-47 along its eastern branch. It. The western branch is what the parties refer to as the "Pilot Point Section"[2] and on the Plan appears to be the only route of access to lots 3-10. Lots 3-10 were subsequently merged with the lots to their north (lots 11-18 on the Plan) and re-labeled lots 69-74B. (Ex. C to Pl's Supp'g S.M.F.) Lots 69-74B are accessible via what is now called "Pilot Point Road." (Pl's Supp'g S.M.F. ¶ 7.) Although the Town disputes this, it seems reasonably clear that the Pilot Point Section of Surf Side Avenue was initially intended to provide the exclusive means of access to (now defunct) lots 3-10, although the intended manner of access (whether by foot or otherwise) is genuinely disputed. (Pl's Supp'g S.M.F. ¶ 4; Def's Opp'g S.M.F. ¶ 4.) The Pilot Point Section was never constructed as a roadway. (Pl's Supp'g S.M.F. ¶ 8.)

The owners of the lots through which the Pilot Point Section passes, several of whom are plaintiffs in this lawsuit, have essentially been using the Pilot Point Section as their "backyards" with minimal development consistent with what one might expect to see in a backyard. Plaintiffs Stewart Wooden and Julie Wooden own lots 67 and 68, and have placed a flagpole and installed a subgrade irrigation system in the Pilot Point Section where it crosses their lots. (Pl's Add'l S.M.F. ¶¶ 23-24.) Plaintiffs Andrew Sommer and Susan Ross own lot 69, and there is a stone walkway, brick patio, renovated open deck, bench, and maintained ground cover in the Pilot Point Section, along with a subgrade drainage system and cement tank. (Pl's Add'l S.M.F. ¶¶ 26-27.) Plaintiff Pilot Point, LLC owns lot 70, which contains a bench and maintained ground cover in the Pilot Point Section. (Pl's Add'l S.M.F. ¶ 29.) Plaintiffs David Leopold and Kara Leopold own Lot 71, which contains within the Pilot Point Section a stairway, fence, and irrigation system. (Pl's Add'l S.M.F. ¶ 31.) Plaintiff Imad Khalidi owns Lot 74, which contains within the Pilot Point Section landscaping (including gardens, trees, and mulch beds), two Adirondack chairs, granite steps, and

---

[2] The eastern branch, referred to by the parties as the Algonquin Section, is now called Surf Side Avenue and is maintained as a private way. (Ex. C to Pl's Supp'g S.M.F.) It is not at issue in this case.

2

a stone walkway. (Pl's Add'l S.M.F. ¶¶ 34-36.) The granite steps replaced an older set of steps; at one point, there was a septic tank and leach field under the Pilot Point Section where it passes through Lot 74. (Pl's Add'l S.M.F. ¶ 35.) There is also evidence of obstructions in the Pilot Point Section in Lots 72, 74A, and 74B, whose owners are not parties to this lawsuit, including: a stone wall in Lot 72; lawns, gardens, and a wrought-iron fence in Lot 74A; and fill in Lot 74B. (Pl's Add'l S.M.F. ¶¶ 33, 38, 43.) The Town does not necessarily dispute Plaintiffs' descriptions of these uses, but does point out that there are unresolved factual issues regarding when certain obstructions were placed in the Pilot Point Section and how long they have been there. (Def's Reply S.M.F. ¶ 45.) The Town also argues that evidence of obstructions or uses in the Pilot Point Section where it transects Lots 72, 74A, and 74B is irrelevant because those lots are not owned by Plaintiffs. (Def's Reply S.M.F. ¶¶ 33, 38, 43.)

The Town has no fee interest in any part of Surf Side Avenue and has never accepted public rights over the Pilot Point Section. (Pl's Supp'g S.M.F. ¶¶ 9, 11.) However, the Town has taken formal action pursuant to statutory authority to extend the Town's right to either accept or vacate its right to accept the incipient dedication[3] of the Pilot Point Section at a later date. (Def's Add'l S.M.F. ¶ 16.) On September 8, 1997, the Town council voted to extend the Town's right to accept certain paper streets within the Town for a period of twenty years. (Def's Add'l S.M.F. ¶ 17.) Pursuant to that vote, the Town recorded a notice of its reservation of rights in the Registry (the "1997 Notice"). (Def's Add'l S.M.F. ¶ 17.) On October 5, 2016, the Town voted to extend its right to accept certain paper streets within the Town for a further twenty-year period. (Def's Opp'g S.M.F. ¶ 18.) Prior to these votes, in 1992, consistent with the Maine Department of Environmental

---

[3] When a developer of a subdivision records a deed with a proposed, unaccepted way, she is said to have made an "incipient dedication" of the proposed way for public use. *See, e.g., Ocean Point Colony Trust, Inc. v. Town of Boothbay*, 1999 ME 152, ¶¶ 1, 7, 739 A.2d 382, 383-84 (Me. 1999).

3

Protection's then newly-promulgated minimum shoreland zoning roadway setback standards, the Town adopted an ordinance (the "1992 Ordinance") that in relevant part barred the construction of any new roadway within fifty feet of the ocean's normal high-water line. (Pl's Supp'g S.M.F. ¶¶ 12, 17.) At least seventy-two percent of the Pilot Point Section is within the fifty-foot setback area. (Pl's Supp'g S.M.F. ¶ 16.) At least ninety-six percent of the Pilot Point Section is within the 1992 Ordinance's seventy-five-foot setback area, where new roadway development is prohibited unless no reasonable alternative exists. (Pl's Supp'g S.M.F. ¶ 25.)

The two Complaints in these consolidated cases each plead two counts for declaratory judgment, which are the same in each Complaint. Count I seeks a declaration that the Town's right to accept the incipient dedication has lapsed at common law. (Pilot Point, LLC Compl. ¶¶ 25-31; Khalidi et al. Compl. ¶¶ 36-43.) Count II seeks a declaration that if the Town accepts the Pilot Point Section of Surf Side Avenue, that it is prohibited from altering the location, construction, or usage of the proposed roadway to become a trail or other type of public recreation space. (Pilot Point, LLC Compl. ¶¶ 32-34; Khalidi et al. Compl. ¶¶ 44-47.)

## DISCUSSION

### I. Ripeness and Timeliness

The Town's threshold argument is that Plaintiffs' claims are not ripe for adjudication. 14 M.R.S. § 5954 of Maine's Declaratory Judgments Act provides that:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

The Declaratory Judgments Act "may be invoked only where there is a genuine controversy." *Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384 (citing

4

*Wagner v. Secretary of State*, 663 A.2d 564, 567 (Me. 1995)). "A genuine controversy exists if a case is ripe for judicial consideration and action." *Id.* (citing *id.*). Ripeness is a question of law. *Johnson v. Crane*, 2017 ME 113, ¶ 9, 163 A.3d 832. Courts consider two factors in determining whether a case is ripe for review: (1) the fitness of the issue for judicial decision and (2) the hardship to the parties of withholding court consideration. *Id.* Speculative hardships cannot satisfy this requirement. *Clark v. Hancock Cty. Comm'rs*, 2014 ME 33, ¶ 19, 87 A.3d 712 (citing *Johnson v. City of Augusta*, 2006 ME 92, ¶ 8, 902 A.2d 855). *See also Keybank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶ 24, 758 A.2d 528 (quoting *Maine Pub. Serv. Co. v. Public Utils. Comm'n*, 524 A.2d 1222, 1226 (Me. 1987)) ("A case is fit for judicial decision if it 'presents a concrete and specific legal issue' that 'has a direct, immediate, and continuing impact' on the parties.")

The thrust of the Town's argument is that "lawsuits involving the actions of municipalities *will not* be ripe until the *final decision* affecting a particular plaintiff has been made." (Def's Mot. Summ. J. 6 (emphasis in original).) However, all of the cases cited by the Town for this proposition govern the final judgment rule for *appeals* of municipal agency actions pursuant to M.R. Civ. P. 80B. In effect, the Town seems to be conflating the "final action" rule for appeals of government actions under M.R. Civ. P. 80B with the rule that there be a genuine controversy ripe for judicial consideration and action for a plaintiff to state a claim for declaratory judgment. *Compare Patrons Oxford Mut. Ins. Co.*, 1998 ME 38, ¶ 4, 707 A.2d 384 (declaratory judgment action ripe where there is a "genuine controversy" because "the case is ripe for judicial consideration and action" as determined by the two-factor test) *with Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 6, 772 A.2d 256 (general rule that for a case to be ripe "final action by an administrative body is required before a party can *appeal* that action.") (emphasis added)).

The Court declines to apply a "final decision" rule to these declaratory judgment claims. The Town cites no authority for such a rule in the declaratory judgment context. Furthermore, it would not make practical sense to apply such a rule here. Imposing a final action rule as to Count I could leave Plaintiffs without a resolution until 2036. (Def's Opp'g S.M.F. ¶ 18.) The Town's right to accept an incipient dedication is an inchoate right that does not grant a current right to enter onto Plaintiffs' properties. *Harris v. S. Portland*, 118 Me. 356, 359, 108 A. 326, 328 (1919) (referencing municipality's "inchoate rights growing out of the incipient dedication"). However, the uncertainty regarding whether the Town *could* exercise such a right is precisely the kind of issue that declaratory judgment actions are meant to resolve, provided the issue is ripe as determined by recourse to the two-factor test described above. *See Dowley v. Morency*, 1999 ME 137, ¶ 11 n.4, 737 A.2d 1061 ("a declaratory judgment action is a suitable form of action for determining rights in real property") (citations omitted); *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980) (purpose of the declaratory judgment act is "to provide a more adequate and flexible remedy in cases where jurisdiction already exists") (quoting *Casco Bank & Tr. Co. v. Johnson*, 265 A.2d 306, 307 (Me. 1970)). *See also* Horton & McGehee, *Maine Civil Remedies* § 3-1(c) at 33 (4th ed. 2004) ("No injury need have been suffered nor wrong inflicted as a predicate to a declaratory judgment action; the very purpose of the declaratory judgments act is to spare the parties the necessity of doing or suffering wrong before their legal rights can be construed judicially.")

The Town also analogizes to the timing rules of M.R. Civ. P. 80B to argue that Count I is untimely because Plaintiffs' cause of action accrued with the recording of the 1997 Notice and they did not file their Complaints seeking declaratory judgments within six years of that recording. As discussed in more detail below, the 1997 Notice did not explicitly list the Pilot Point Section.

6

Plaintiffs did not feel compelled to bring the instant litigation until the Town began to take preliminary, exploratory steps toward development of the Pilot Point Section, which did not happen until 2016-17. (Pl's Add'l S.M.F. ¶¶ 58-59.) 2016 was also the year that the Town voted to extend its right to accept proposed ways in the Town a further twenty years by recording a second notice in the Registry, this time explicitly listing Surf Side Avenue. (Def's Supp'g S.M.F. ¶¶ 6-7.) In the context of this case the Court concludes that Count I is timely.

Turning to the application of the two-factor test for ripeness, the Court concludes that the issue of whether the Town's right to accept the incipient dedication of the Pilot Point Section has lapsed, presented in Count I, is ripe. As to the first factor, the issue is fit for judicial decision because it presents a concrete and specific legal issue—whether the Town's right to accept the Pilot Point Section has lapsed at common law—and furthermore the issue has a direct, immediate, and continuing impact on both Plaintiffs' use or disposition of their property and the Town's planning with respect to the Pilot Point Section. *See Keybank Nat'l Ass'n*, 2000 ME 153, ¶ 24, 758 A.2d 528. As to the second factor, withholding judicial resolution of the issue imposes a hardship on Plaintiffs because Plaintiffs have shown that the Town's right to accept the Pilot Point Section is affecting property values and the marketability of the affected plots now. (Pl's Add'l S.M.F. ¶¶ 22, 42.) With respect to the Town, a judicial declaration as to whether the Town's right has lapsed "can only aid [it] in making use of its lawful . . . powers." *See Me. Pub. Serv. Co. v. Pub. Utils. Com.*, 524 A.2d 1222, 1226 (Me. 1987).

However, the Court reaches the opposite conclusion with respect to Count II. The issue of whether the Town is prohibited from altering the location, construction, or usage of the proposed roadway to become a trail or other type of public recreation space is not ripe under the two-factor test. First, there is no "concrete, certain, or immediate legal problem" presented by this Count. It

7

is undisputed that on October 2016 and February 2017, the Town discussed, among other options for the space, the creation of a public trail system through the Pilot Point Section. (Pl's Add'l S.M.F. ¶ 58.) It is also undisputed that the Town retained Sebago Technics to survey, analyze, and provide the Town with a comprehensive study regarding the feasibility of locating a public walking path on or around Surf Side Avenue. (Pl's Add'l S.M.F. ¶ 59.) However, this is the extent of the evidence of the Town's intent to construct a trail or public recreation space along the Pilot Point Section. Put another way, there is no factual dispute that the Town has not taken any formal action on accepting the way for any purpose. The legal problem is entirely speculative. Although the declaratory judgment law does permit "anticipatory challenges to *a regulation or ordinance* to resolve a dispute regarding a planned action, before the matter actually proceeds and the challenged ordinance is applied to the detriment of the plaintiffs[,]" Plaintiffs in this case are not challenging an ordinance. *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 14, 868 A.2d 172 (emphasis added).

Second, Plaintiffs have not demonstrated any harm they will suffer if the Court withholds decision on the issue. Plaintiffs' argument of harm is hedged entirely in the context of an argument discussed below; that is, that the Town is prohibited from constructing a paved road along the Pilot Point Section due to a municipal ordinance and Maine Department of Environmental Protection regulations. In essence, Plaintiffs argue that because resolution of Count II in their favor would be dispositive of the claim stated in Count I, that declining to decide Count II harms them. This is the kind of speculative harm that our Law Court has held insufficient under the second factor of the ripeness test. *See Clark*, 2014 ME 33, ¶¶ 19-20, 87 A.3d 712.

In sum, the Court concludes that the issue of the Town's hypothetical, future use of an easement that it may or may not accept is not ripe. Count II will be dismissed as unripe. This

8

dismissal is without prejudice, as future action by the Town may cause the issue presented in that Count to ripen.

## II.     Merits

Public and private rights in "paper streets" or proposed, unaccepted ways in subdivisions are governed by 23 M.R.S. §§ 3031-3035. 23 M.R.S. § 3032 describes the circumstances under which a proposed, unaccepted way may be deemed vacated:

> A proposed, unaccepted way or portion of a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds prior to September 29, 1987 is deemed to have been subject to an order of vacation . . . if, by . . . September 29, 1997, both of the following conditions have been met:
>
> A. The way or portion of the way has not been constructed or used as a way; and
>
> B. The way or portion of the way has not been accepted as a town, county or state highway or as a public utility or recreational easement.

*Id.* § 3032(1-A)(A)-(B). However, pursuant to section 3032(B):

> The municipal officers of the affected municipality may except a proposed, unaccepted way or portion of a proposed, unaccepted way . . . from the operation of the time limitations [described above] . . . by filing, in the registry of deeds . . . a notice stating that the way or portion of the way is excepted from [deemed vacation] for a period of 20 years from the filing of the notice. To be effective, this exception must be filed prior to the expiration of the time limitations . . . . An extension accomplished under the subsection may be extended by the municipal officers for a subsequent 20-year period by the filing of a new notice within the preceding 20-year extension period.

However, "section 3032 applies only to those incipient dedications that have not lapsed pursuant to the common law." *Ocean Point Colony Trust, Inc. v. Town of Boothbay*, 1999 ME 152, ¶ 7, 739 A.2d 382. Whether the Town's right to accept the incipient dedication had lapsed prior to the recording of the 1997 Notice is discussed below.

9

Here, there is no dispute that the Pilot Point Section is a portion of a proposed, unaccepted way (Surf Side Avenue) laid out in a subdivision plan recorded in the Registry on April 10, 1911 that has never been constructed or accepted. (Pl's Supp'g S.M.F. ¶¶ 1, 8, 11.) There is no dispute that on September 8, 1997, the Town Council voted to extend its right to accept certain paper streets within the Town for a period of twenty years and recorded the Notice in the Registry, and then voted again to extend its right to accept certain paper streets a further twenty years prior to the expiration of the first notice, on October 5, 2016, and recorded notice of that extension in the Registry as well. (Def's Supp'g S.M.F. ¶¶ 4-7.)

Although it is undisputed that the Town council voted to extend its rights and recorded a section 3032(2) notice in the registry of deeds, Plaintiffs challenge the legal effectiveness of the 1997 Notice in their written memoranda.[4] Plaintiffs argue that the 1997 Notice is defective because it did not list the ways that were subject to the extension but instead purported to extend its rights to accept all of the paper streets in the Town, with a few specifically listed exceptions. (Pl's Supp'g S.M.F. ¶ 5.) The Maine Superior Court (*Horton, J.*) has previously concluded that the 1997 Notice is sufficient under 23 M.R.S § 3032(2). *Monroe v. Chatmas*, No. RE-15-169, 2016 Me. Super. LEXIS 54, at *11 (March 23, 2016). Based on the doctrine of stare decisis and the persuasive authority of *Monroe* the Court concludes that the 1997 Notice is effective under section 3032.

Plaintiffs' primary argument for summary judgment is that the Town abandoned its right to accept the Pilot Point Section when it enacted the 1992 Ordinance, and this was the main focus of Plaintiffs' presentation at oral argument. As authority for this argument, Plaintiffs analogize to *Phillips v. Gregg*, 628 A.2d 151, 153 (Me. 1993) and *State ex rel. Shemo v. City of Mansfield Heights*, 765 N.E.2d 345, 354-55 (Ohio 2002). The Court does not find the analogy to either case

---

[4] Plaintiffs did not pursue this argument at the oral argument and seemed to argue under the assumption that the 1997 Notice was effective.

10

persuasive. *Phillips* discusses what a plaintiff must prove to show abandonment of an easement, as opposed to the lapse of a municipality's right to accept an incipient dedication, which requires proof of different elements. A plaintiff can prove abandonment of an easement through a history of nonuse coupled with an act or omission evincing a clear intent to abandon. *Phillips*, 628 A.2d at 152. As Plaintiffs point out, "when a highway [is] established . . . the common rule is that the public acquires only an easement in land taken for the establishment of the highway except as the rule has been changed by statute[,]" as was done in Maine, but not until 1975, but long after the Plan was recorded in 1911. *See Rockland v. Johnson*, 267 A.2d 382, 384 (Me. 1970);[5] 23 M.R.S. § 3021(2). However, the instant case does not concern an easement, which is a cognizable property interest, but a right to accept an incipient dedication, which is an inchoate right of the public to accept a proposed, unaccepted way. *Harris v. S. Portland*, 118 Me. 356, 359, 108 A. 326, 327 (1919). Put simply, the Town could not have abandoned its easement over the Pilot Point Section in 1992 because it did not have an easement over the Pilot Point Section in 1992. It may have had an inchoate right to accept the incipient dedication, which, if previously exercised, would have resulted in an easement, provided that its right to accept the incipient dedication had not lapsed. Whether the Town's right to accept the Pilot Point Section had lapsed is determined by a different test that is distinct from the rule from *Phillips* for determining whether an easement has been abandoned at common law. *See Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶¶ 7-9, 739 A.2d 382.

---

[5] Plaintiffs also cite *Rockland* for the proposition that the scope of the resulting easement is limited to a "right to the viatic use of the road by the public." *Rockland*, 267 A.2d at 385. The Court's conclusion above that Count II is not ripe is bolstered by *Rockland*. In that case, the Law Court did not have to speculate as to whether the municipality's use of an easement it had accepted was impermissible because it was already making use of its easement. Here, the Town has no easement, may never have an easement, and whether its use of any easement it may eventually acquire would be impermissible cannot be determined without speculating as to what that use might be.

11

In Ohio, the *Shemo* Court did apply a test similar to the *Phillips* test for the abandonment of easements to determine whether the City of Mayfield Heights had "abandoned" a paper street, although it seems that evidence of *either* non-use for a specifically delineated period (twenty-one years) *or* a municipality's intent to abandon a paper street is sufficient to prove abandonment of a paper street in Ohio. *Shemo*, 765 N.E.2d at 354; *cf. Phillips*, 628 A.2d at 152 (requiring nonuse *and* an act or omission evincing a clear intent to abandon). Because the *Shemo* Court determined that plaintiffs had proven non-use for the requisite period, its discussion of the municipality's "intent to abandon" through inconsistent municipal action may be dictum. Regardless, while Ohio courts may apply Ohio's test for abandonment to determine whether a municipality's right to accept a paper street has lapsed, Maine applies a different test, as explained below.

Finally, even if Maine law were to apply the common law rule of abandonment of easements to a municipality's right to accept an incipient dedication, the Court disagrees with Plaintiffs that the 1992 Ordinance is "an act or omission evincing a clear intent to abandon." *Phillips*, 628 A.2d at 152. "To prove intent to abandon, a party must show unequivocal acts inconsistent with the further assertion of rights associated with the existence of the easement. . . . The acts asserted as evidence of abandonment must be decisive and conclusive and thereby indicate a clear intent to abandon the easement." *Id.* at 153; *see also Dupuis v. Ellingwood*, 2017 ME 132, ¶ 10, 166 A.3d 112 ("A party asserting the extinguishment of an easement by abandonment must establish, by clear and convincing evidence, a history of nonuse coupled with an act or omission evincing a clear intent to abandon.") (citations and quotations omitted). "The effectiveness of an abandonment depends on a finding of intention." *Stickney v. City of Saco*, 2001 ME 69, ¶ 50, 770 A.2d 592. Here, Plaintiffs have presented no evidence of intention, let alone clear and convincing evidence of intent to abandon. Instead, Plaintiffs urge the Court to follow the

12

reasoning of the *Shemo* Court and infer an intent to abandon from the mere fact that the Town passed an ordinance which may prevent the Town from constructing a certain kind of way along the Pilot Point Section. At the summary judgment stage, if the Court is to draw any inference, it is in favor of the non-movant. *See Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63 (courts review "the facts in the light most favorable to the nonmoving party" on summary judgment). The Court declines to conclude that the 1992 Ordinance is clear and convincing evidence of an unequivocal act inconsistent with the Town later exercising its right to accept the Pilot Point Section.

In any event, as noted above, Maine does not apply the common law rule for abandonment of an easement to determine whether a municipality's right to accept an incipient dedication has lapsed. In *Ocean Point Colony Trust, Inc. v. Town of Boothbay*, the Law Court lays out what is required for a municipality's right to accept an incipient dedication to lapse:

> At common law an incipient dedication must be accepted within a reasonable time or the right to accept that dedication will be lost. Adverse possession of the incipiently dedicated way will cause the dedication to lapse, but mere non-use or use that is not inconsistent with the premise that the public may later open the path will not cause the incipient dedication to expire. The facts and circumstances of each case determine whether a reasonable time for acceptance has passed. We have consistently found that the public's right to accept the incipient dedication lapses when another person possesses the property and exhibits ownership over the property in a manner that is inconsistent with the incipient dedication and would likely constitute adverse possession of the property.

1999 ME 152, ¶¶ 8-9, 739 A.2d 382 (citing *Burnham v. Holmes*, 137 Me. 183, 16 A.2d 476, 478 (1940); *Harris v. City of South Portland*, 118 Me. 356, 108 A. 326, 327 (1919); *Kelley v. Jones*, 110 Me. 360, 86 A. 252 (1913); *Bartlett v. City of Bangor*, 67 Me. 460, 466 (1878)). The *Ocean Point Colony* opinion is explicit that the "facts and circumstances of each case determine whether a reasonable time for acceptance has passed," and declines to impose any bright-line rules

13

as to what uses are inconsistent with the public's later acceptance of a way or how long the use must be extant for the public's ability to accept the way to lapse. *Id.* ¶ 9.

The Court concludes that there are unresolved factual issues that bear on whether the Town's right to accept the Pilot Point Section has lapsed. First, there is a dispute about whether the purported inconsistent uses identified by Plaintiffs are indeed inconsistent "with the premise that the public may later open the path." *Ocean Point Colony Tr., Inc.*, 1999 ME 152, ¶¶ 8, 10, 739 A.2d 382. The case law is not explicit as to whether this issue is factual or legal, but the case law suggests that it is factual. There is, however, some guidance as to what is insufficient as a matter of law. *See Bartlett*, 67 Me. at 466 ("using the land for pasturage, or the growth of crops, or other purpose, which does not indicate an intention that it shall never be used as a street," is not an inconsistent use). Maintained ground cover, landscaping, fill, and subgrade irrigation systems are thus unlikely to be inconsistent uses sufficient to foreclose the Town from accepting the Pilot Point Section. However, at the oral argument, Plaintiffs argued that those uses are distinguishable from the "agricultural" uses the Law Court held insufficient in *Bartlett*. Plaintiffs may attempt to prove so at trial.

Second, there is a dispute about how long any particular structure or object has been in the Pilot Point Section, and whether such structures and objects have been there consistently. The Court concludes that there is a genuine factual dispute as to whether any of the myriad uses identified by Plaintiffs have been in the Pilot Point Section long enough to satisfy the test from *Ocean Point Colony*, which the Law Court explicitly held to be a "facts and circumstances" inquiry. *Ocean Point Colony Tr., Inc.*, 1999 ME 152, ¶ 9, 739 A.2d 382. Plaintiffs will bear the burden of proving that under the facts and circumstances of this case the various uses they have

14

identified have been in the Pilot Point Section of their lots for a sufficient period of time such that "a reasonable time for acceptance has passed." *Id.*[6]

Finally, the parties dispute whether the purported "inconsistent uses" identified by Plaintiffs actually obstruct the Pilot Point Section where it traverses each Plaintiff's lot. At the oral argument, the Town argued that each Plaintiff must prove inconsistent use for the requisite time period in order to prove lapse. However, in *Kelley*, the Law Court suggests that a party may prove lapse as to a portion of a "paper street" without proving lapse over its entire length. *Kelley*, 110 Me. at 363, 86 A. at 254. In that case, the Law Court assumed in dicta that even where "substantial buildings had been erected upon" a proposed, unconstructed way by plaintiffs' predecessors-in-interest, the public still retained rights in a "small 'heater-piece' at the extreme point . . . which is said to have been constantly used as a part of the sidewalk." *Id.* Analogizing to the instant case, this means that Plaintiffs are entitled to prove the public's rights have lapsed as to some lots, or portions of those lots, at trial. On the other hand, as the Town pointed out at oral argument, if the Town can and does accept the Pilot Point Section, the resulting way may be able to be constructed such that it avoids the obstacles in its path identified by Plaintiffs.[7] The Court concludes that on this record Plaintiffs have generated a genuine factual dispute as to whether the Town's rights have lapsed through inconsistent as to at least some portions of the Pilot Point Section in each of their

---

[6] At the oral argument, the Town challenged the sufficiency of Plaintiffs' evidence of inconsistent uses during the requisite period—1911 to 1997—pointing out that most Plaintiffs did not acquire their parcels until after 1997 and arguing, correctly, that any uses after the recording of the 1997 Notice are not relevant to the lapse analysis. *Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶ 7, 739 A.2d 382 (agreeing with defendant that section 3032(2) "applies only to those incipient dedications that have not *already* lapsed . . . . pursuant to the common law") (emphasis added); 23 M.R.S. § 3032. The Court concludes that on this record Plaintiffs have generated a factual issue as to whether any inconsistent uses were extant for a reasonable time between 1911 and 1997. The Town can attack the Plaintiffs' witnesses' credibility on this issue and argue that the credible evidence is insufficient at trial.

[7] Plaintiffs may prove that the Town's right has lapsed as to enough lots that it would be infeasible for the Town to make any use of those portions of the Pilot Point Section over which its right to accept has not lapsed. Though the scope of the Town's easement in the event of any acceptance is not yet ripe, a declaratory judgment as to the geographical scope of what it can accept will be of use to the Town in determining whether it accepts it at all. This further highlights why Count I is ripe for judicial decision. *See Me. Pub. Serv. Co.*, 524 A.2d at 1226.

15

lots in the context of their opposition to the Town's motion for summary judgment. On the other hand, with respect to their motion, Plaintiffs have not demonstrated that there is no dispute of fact that the Town's right to accept any portion of the way has lapsed through inconsistent use.[*]

## CONCLUSION

Based on the foregoing it is hereby ordered:

1. That Count II of the Complaints in BCD-RE-18-05 and BCD-RE-18-06 is DISMISSED as unripe. Because the claim stated in Count II of each Complaint may ripen in the event that the Town accepts the Pilot Point Section, this dismissal is without prejudice.

2. That both parties' motions for summary judgment on Count I of the Complaints in BCD-RE-18-05 and BCD-RE-18-06 are DENIED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 2\1 ͷ\1 ۹

M. Michaela Murphy
Justice, Business and Consumer Court

Entered on the Docket: 2/19/19
Copies sent via Mail___ Electronically ✓

---

[*] A main point of Plaintiffs' oral argument was that the only easement the Town can accept over the Pilot Point Section is a broad thoroughfare suitable for modern vehicular traffic. As the Court concluded above, the issue of the scope of the Town's easement in the event it accepts the Pilot Point Section, assuming its right to accept the Pilot Point Section has not lapsed, is not ripe.

16